Opinion of the court delivered by
Judge Whyte.
This was an action of ejectment commenced in the circuit court of Claiborne county on the 16th March 1820, for a tract of land containing about twelve hundred and eighty acres. At October term, 1822, the venue was changed to Grainger county by the defendant below, and at April term of that court for 1825, the venue was again changed to Greene countj by the plaintiff. At a special term of the Greene circuit court, held in January 1829, the cause was tried; a verdict and judgment were rendered for the defendants, and an appeal in the nature of a writ of error prosecuted by the plaintiff to this court.
Upon the argument in this court, the defendant’s counsel made three points, either of which it was contended, if sustainable, must cause the case to be decided in his favor. The first is, that in the progress of the suit it became discontinued, and is not novr legally before this court. The facts upon which this point rests, are these: The suit, it is admitted, was legally depending in the circuit court of Grainger county at its April term in 1825, at which term the following order was made: “The venue of this cause, on the affidavit of the plaintiff, is changed to the circuit court of Greene county; and it is ordered by the court, that the clerk of this court make out and send a true transcript of all the proceedings had in *442 this cause, to the said circuit court of said county, at least fifteen days before the sitting of the next term of said court, on the first Monday of September next.” The transcript mentioned in this order was made out and sent on the 27th April 1825, as appears by the endorsement thereon; instead of reaching Greene circuit court at least fifteen days before its September term 1825, it only arrived there, as appears by another endorsement, on the 5th January 1826, when it was filed in the office of the clerk of said circuit court of Greene county, by William Richardson, agent for the plaintiff. At March term 1826, of said circuit court of G reene county, the following entry appears on record: “Monday, 6th March, 1826. On motion of the defendant by his attorney, a rule is allowed him, to show cause why a discontinuance shall be entered, or the cause stricken from the docket.” On Friday the 10th, this motion was argued, and ordered by the court to be discharged.
The above are the facts; and the question upon this point is, did the circuit court of Greene county acquire by them jurisdiction of the cause ?
It is first to be observed, that the circuit court of Greene would have no original jurisdiction of the cause, the, subject matter of it being local, and confined to the county where the land lay. Neither could it give itself jurisdiction by any act of its own, as by retaining possession of the transcript, or refusing to strike the cause from off the docket. This narrows down the question to the acts of Assembly authorizing the change of venue, and to the exercise of the power conferred by them, as giving to the circuit court of Greene, its assumed jurisdiction over the cause. The act of 1809, ch. 49, sec. 17, authorizes the circuit judges at or before the first trial term of any suit, to change the venue thereof, and when a change shall be allowed in any suit, the trial thereof shall be adjourned under the direction of the judge, to the nearest adjoining county, free from exception, &c. By the act of 1815, ch. 166, sec. 8, the circuit judges are authorized io allow this change iftcr (he first (rial, and so long as the suit may be *443 in a stale for trial; and the act of 1819, ch. 43, restricts the right of each party to one change only.
The power thus conferred on the circuit judges is a special power, having no reference to their general jurisdiction as judges of the circuit courts; but is dependent upon these acts, and limited by them. The circuit court of Grainger, acting under this power, made the order of the 11th April 1825: pursuant to this order, the clerk made out and sent the transcript the 27th of the same month; it wms filed in the Greene circuit court, not fifteen days before its ensuing term, being the September term 1825, but on the 5th January 1826. This failure, by the plaintiff’s counsel, is attempted to be excused by laying the blame on the clerk of the circuit court of Grainger county, whose duty it was, it is argued, to have had it there according to the order. The nature of the office of clerk of Grainger circuit court did not require this; the order itself did not require it; the order was by the clerk punctually, both in form and substance, obeyed. The record shows the defaulter; it was the plaintiff M’Henry himself, in whose agent’s hands it was found on the 5th January 1826.
But suppose a state of facts, which instead of showing great neglect of the party, as in the present case, show only misfortune, as the examples urged on the argument; high waters intervening and delaying, or stopping the transmission of the transcript altogether, or some other accident occurring, as its total loss, so as to remove all moral objection in the case, will this help the matter, and supply the defect of the execution of the law? Will the service of a capias ad respondendum after the return term, and before the next succeeding term, bring the party into court? or will the levy and sale of an execution after it is spent, by transgressing the time authorized by the writ, be an administration of the law’? Surely not; (4 Comya’s digest 233, 234,) and why? Because a departure from the mandate of the law, would produce inextricable confusion, disorder and mischief, and would be destructive of its administration.
*444 The point then is, not whether there exists a moral excuse for the party whose duty it was to transmit the transcript and file it by the time prescribed, but whether the act appointed by the law is done, whether the special authority is pursued. The authority given by the circuit court of Grainger, under the venue laws, to the circuit court of Greene county, was for this last court to take cognizance of the cause at its September term 1825. No authority' was given to the circuit court of Greene to take cognizance of it at any other time, or in any other manner, than that pointed out in the order. •
The consent of the parties could not have given jurisdiction at the March term 1826, if that had been attempted, or at any other term; for as before observed, the action not being transitory, and dependent for its inception upon the will of the parties as to the choice of the jurisdiction or court, but local, cannot be divested of the inci-dentbelonging to that character, to wit, the necessity of bringing it in the county where the land lies, by any other means than by legislative interposition. This jurisdiction has through the medium of the venue laws above cited, been acted upon by the order of the Grainger circuit court,and the special authority thereby given. Not being pursued, all proceedings aside from a compliance or execution of the authority given, though affecting to be done in compliance with it, are null and void. Such in the present case, are the reception, retention and final disposition of the cause by the Greene circuit court, at its March term 1826, and other succeeding terms, all of them being “coram non judice” and void. I am thereforeof opinion, that this first point is sustained by the facts presented on the record and the law applicable to them.
The second point is, that the execution under which M’Henry claims title as a purchaser at sheriff’s sale, is void, being an execution for costs only, and that therefore no title was conferred upon him by said s de. This objection is founded on the acts of 1779, ch. 4, sec 4; 1784, ch. 7, sec. 8; 1794, ch. 1, sec. 75; and 1796, ch. 7, sec. 9, all of which require, “that to the execution shall *445 be annexed a copy of the hill of costs of the fees on which such execution shall issue, wrote in words at length, without any abbreviation whatever; and all executions issuing without the bill of costs so annexed, shall be deemed illegal, and no sheriff shall serve or execute the same.” The executions under which the plaintiff claims title as purchaser, were in direct opposition to the command of these acts of Assembly. It will only be necessary to notice one item of the bill of costs annexed to the pluries, dated first Monday of November 1818, which is thus expressed: “Bill of costs from the supreme court of law and equity for the Hamilton district, $¡1218 45:” on this execution was indorsed, “came to hand 20th June 1819, levied on two tracts of land of six hundred and forty acres each, one known by the name of John Wallen’s tract, the other by the name of the Smith entry tract, and not sold by reason of mistake in the advertisement.” A ven-ditioni expolias issued first Monday of May 1819, on which bill of costs, the same Hem is expressed in the same manner, and also the following: “costs of district court of law in the Hamilton district not before charged, as appears by the bill of costs, $2i2 33í, making, niter giving some credits, $1408 67.” On this execution, is this return: “came to hand 8th June 1819, levied the same day -on two six hundred and forty acre tracts, one known by the name of the Smith entry tract, and the other as John Wallen’s tract, including the place where John Wallen now lives, and sold the same after giving lawful notice, on the 10th Aug. 1819, to Wm. M’Henry for $330, he being the highest and best bidder.”
Such are the executions under which the plaintiff claims, and a grosser violation of the acts of Assembly authorizing executions to issue for fees when suits are determined, and the fees not paid by the party from whom they were due, I say, a grosser violation of these acts can with difficult}' be conceived, certainly cannot be found on the records of any court of this Slate. They are declared by those acts to be illegal, and that no sheriff shall serve or execute them. It seems contrary to reason, that *446 the same thing can be at the same time, both illegal and legal, or in other words that an execution which by express declaration of the Legislature, is to be deemed illegal, and no sheriff to serve or execute the same, shall notwithstanding, and in the face of this declaration have a legal effect, and give a legal right; and the sheriff, by a positive and palpable transgression of the statutes and his duty, communicate through this forbidden medium, by his agency, a legal title to the plaintiff, to be enforced by a court of law, sitting and acting under the authority, control and operation of these statutes. The position carries to my mind absurdity and contradiction on its face. Accordingly this court at the last term, in a suit between Wm. M’Henry’s lessee and John Wallen, were of opinion, and so decided, that an execution subject to the same kind of defect, in not having its bill of costs wrote in words at length, without any abreviation whatever, was incapable of giving a right and title to the plaintiff to recover on.
This court is now asked to review that decision, and it is argued, that these acts directing executions to have the bill of costs wrote in words at length, &c. <fcc. are for the benefit of the defendant, and according to the established rule, that every one may renounce the benefit of a law introduced in his favor, the defendant has exercised his option in the present case, and waived bis privilege, by not moving to quash the execution. It may be here asked, (to show the weight of this argument,) how, when or where, between the issuance of a fieri facias execution and its return, is this motion to quash to be made; and if it cannot, a successful application afterwards at the return term, would not cure, oftentimes, the one tenth or one hundredth part of the mischief accruing to the defendant by a sale and transfer to a purchaser of his property. The interposition of a court between the issuance and return, in some case specially circumstanced, might prevent the injury by arresting the progress of the execution till further order. But the want of power in the defendant to avail himself of this interposion, would render if. *447 only a nominal remedy;he might want either time to do the business, the opportunity of counsel, or the means of payment, or the making a deposit of the money in the ex-' ecution, or giving security to indemnify the plaintiff therein.
But it is by far too narrow a view to take of these acts, as being introduced for the protection of the defendant alone. They were intended for another great purpose, to aid the administration of the public justice of the country, by the prevention of extorsive exactions which disguised under general charges like the present case, would, I have no doubt, from the extended field of their possible action, embrace every part of the State, and every transaction between man and man requiring the agency of the law, and ending in an execution. It became a consideration of the greatest importance with the Legislature, to preserve the purity of executions,being the channels of justice, which purpose they effected by the alternative, of the execution shewing on its face the items of costs in words at length, without any abreviation whatever, or by cutting it down entirely; by deeming it illegal, and that no sheriff should serve or execute it.
Reviewing therefore the decision of the last court in the case of M’Henry’s lessee vs. John Wallen, Í am satisfied with it.
The 3d point made by the defendant is, that no new trial ought to have been granted in the cause by the circuit judge, and therefore no error in refusing it. Much testimony was introduced and submitted to the jury on the trial, and the court gave a very extended, particular, and luminous charge, which is believed to be correct; no exception thereto was taken by the plaintiff’s counsel. The jury applied the facts to the law; it was their province to do so; and for my part I am far from believing that they were not well warranted in the conclusion they have drawn: there is no ground for the interference of this court as prayed by the plaintiff’s counsel. Judgment must therefore be rendered for the defendant in error.
Under the particular circumstances of this case, that *448 judgment will admit of two forms, but in tbeir efiect they will have the same operation. A judgment rendered on the first ground of defence taken by the defendant’s counsel, would be a judgment reversing the judgment rendered by the circuit court of Greene county, because it had no jurisdiction of the cause; and this court proceeding to render such judgment as the circuit court ought to have rendered, would order the cause to be stricken from the docket. On the 2nd and 3rd grounds of defence taken by the defendant’s counsel, for defect of title and want of merits, this court would affirm the judgment of the circuit court of Greene. Iam willing either judgment should be rendered; and as my brother judge has adopted the latter, let that judgment be entered.
Judgment affirmed.