Shields *v.* Davis.

SHIELDS *v.* DAVIS.

(*Knoxville.* November 16, 1899.)

CHANCERY JURISDICTION. *Contest for office of Sheriff.*

The Chancery Court has no jurisdiciion of a contest over the office of Sheriff. The Circuit Court has exclusive jurisdiction of such contest. A contest of this character is not a "cause" within the meaning of the Act of 1877, conferring upon Chancery Courts concurrent jurisdiction of "all civil causes of action triable in the Circuit Court," except for unliquidated damages.

Acts construed: Acts 1877, Ch. 97.

Code construed: §§ 1309, 6109 (S.); §§ 1098, 5043 (M. & V.); § 889 (T. & S.).

Cases cited and approved: Simmons *v.* Leonard, 89 Tenn., 622; Anderson *v.* Gossett, 9 Lea, 644.

Cited and distinguished: Morris *v.* Nashville, 6 Lea, 337.

---

FROM SEVIER.

---

Appeal from Chancery Court of Sevier County. H. B. LINDSAY, Ch.

W. G. CATON, W. L. DUGAN, and WASHBURN, PICKLE & TURNER for Shields.

J. R. PENLAND and E. F. MYNATT for Davis.

BEARD, J. The present bill was filed by complainant, who, upon the face of the election --

turns, was the unsuccessful candidate for the office
of Sheriff, against the defendant, who had received
a certificate of election, but who had not been
inducted into the office, to contest the latter's
right to the office, and the question raised by the
record is, Has the Chancery Court jurisdiction to
try such a contest? An answer to this question
depends upon a proper construction of our statutes
bearing on contested elections. By Section 1309 of
Shannon's Code (Sec. 889, of the Code of 1858)
it is provided that "the Circuit Court hears and
determines all contests of the election of Sheriffs,
clerks of the Circuit, Criminal, or other Courts
whose clerks are elected by the people, except
clerks of the County Court."

No other provision was made for the prosecu-
tion of contests of the election to these various
offices, and it conceded that by the terms of this
section jurisdiction of the Circuit Court was ex-
clusive. But it is insisted that the effect of
Chapter 97 of the Acts of 1877 was to give the
Chancery Court concurrent jurisdiction with that
Court in the trial of all cases of contested elec-
tion of Sheriffs, clerks, etc. The terms of that
Act are embodied in the (Shannon's) Code, Section
6109, as follows: "It (the Chancery Court) shall
have and exercise concurrent jurisdiction with the
Circuit Court, of all civil causes of action triable
in the Circuit Court, except for injuries to per-
son, property, or character involving unliquidated

damages," etc. The argument is that a contest of the election of any one of the officers embraced in Code (Shannon), Section 1309, is a "civil cause," and thus falls within the enlarged jurisdiction of the Chancery Court.

This is one of the sections of Chapter 3 of the Code, which is entitled "Contested Elections." On an examination of that chapter it will be found that the Legislature has adopted a general scheme for the trial of all contested elections, and to that end and for that purpose conferred jurisdiction upon different tribunals. By Section 1308 of the (Shannon) Code the right was given to the County Court "to hear and determine all cases of contested elections of Justices of the Peace, Constables, County Registers, County Court Clerks, County Surveyors, or (and) Rangers."

Section 1309 has already been set out.

Section 1310 provides for contests as to the office of Supreme Judge, and Section 1312 enacts that "contests for the office of Chancellor are tried before the Chancellor of some division adjoining that in which such election is held, while Section 1313 (old Code, Section 893) is in these words: "Contests for all judicial offices and of district attorneys-general are tried before the Chancellor of the division in which such election was held, and if such election was partly in one chancery division and partly in another, then before the Chancellor of either division, and, if there be no Chan-

cellor in that division, before the Chancellor of the nearest division having a Chancellor."

Thus it will be seen these statutes have provided for contests for every office of the State filled by popular election save alone for that of Governor, and a contest as to this office is *sui generis,* and is covered by Chapter 9 of the Acts of 1895.

It will also be seen that the contests involving judicial offices (including the office of district Attorney-general) are to be tried by a Chancellor and not by the Court over which he presides. The statutes authorizing these contests "confer no jurisdiction upon the Court of Chancery." By the proper construction of these statutes "a special tribunal is created" for the trial of contested elections held under "these provisions," of which the person holding the office of Chancellor for the division in which the contest may arise is constituted the Judge. "This tribunal may not improperly be called a Court, but in its organization and mode of procedure it is very unlike a Court of Chancery. . . . The proceeding is commenced, not in the regular form of a bill or petition, but by the presentation to the Chancellor of a mere sworn statement of the grounds of contest. No process is required to be issued. The Chancellor is to appoint a day of trial not less than thirty nor more than fifty days from the day of such presentation, and a place of trial at

some point within the circuit in which such election was held, and a copy of such statement, with the day and place of trial indorsed thereon, is to be served on the person whose election is contested, or left at his usual residence by a Sheriff or Constable at least twenty days before the trial." *Wade* v. *Murray,* 2 Sneed, 50. And having heard the testimony and determined the contest it is then the Chancellor's duty to send a certified copy of his decision, giving a statement of the legal votes cast for each of the contesting parties, to the Governor, whose duty it is to issue a certificate in accordance with that decision.

It is very evident that this proceeding before this special tribunal is exceptional in character, and that whatever else it may be, it, at least, is not in the contemplation of the statute a "cause" in the sense in which the word is used when speaking of a "civil cause" or a "chancery cause." Now, is a contest over the election of a Sheriff, or a clerk of the Circuit, Criminal, or other Court any more of a "cause" than those of which we have been speaking? Did the Legislature, in selecting the Circuit Court as a tribunal to try a contested election in regard to any one of these offices, intend to embrace such a contest within its common law jurisdiction and confer upon it all the characteristics of an ordinary "civil cause?" It would be a difficult matter to assign a sound reason for discriminating against the contests over the election

for the various judicial offices and in favor of those carried on with regard to subordinate clerical and executive offices—why the one should be treated as a mere "proceeding" terminating in a "decision," which, for its efficacy, does not depend upon enrollment, and the other a cause pursuing the forms and provisions of the common law.

We are satisfied no such distinction was contemplated by the Legislature, and the clear intimation of this Court in *Boring* v. *Griffith,* 1 Heis., 456, a case involving a contest as to the election to the office of Sheriff, is that such a proceeding is not necessarily according to the forms of the common law. In the opinion in that case it is characterized as "a proceeding instituted . . . to contest the defendant's right to the office of Sheriff," and it is announced that in such a "proceeding," in the absence of any express regulations, "the Circuit Court must be left to regulate its own practice, provided no fundamental principles are violated; and, first, the Court should see that the opposing party has due notice and his day in Court, to appear and resist the proceeding."

While a Circuit Court has the inherent power to adopt general rules for the orderly and expeditious discharge of business, yet, with regard to the institution of suits properly falling within its jurisdiction, as well as their conduct, either the common law, or else the statute, regulates the practice and leaves, so far as the successive steps in

their progress are concerned, nothing to the discretion of the Judge. In such suits the law prescribes the practice.

Treating the Circuit Court in the cases falling within its jurisdicton as the Chancellor with regard to such as fall within his, as a special "tribunal" selected for this service, we have a general plan or scheme working harmoniously in all. its parts. If, however, the contention of complainant's counsel is correct, that the contested election of a Sheriff or clerk in the Circuit Court is a civil cause, like an action of ejectment, of which the Chancery Court has concurrent jurisdiction by virtue of the Act of 1877, then we have the anomalous condition that, while given in these cases by construction this jurisdiction as to the contests over judicial offices and that of district attorneys-general, it has no jurisdiction, and yet all these contests are provided for in the same article of the Code.

We do not believe that it was the intention of the Legislature to make this discrimination, nor is any wise public policy to be subserved by giving these statutes a construction which would bring about such abnormal results.

While Chapter 97 of the Acts of 1877 (Shannon's Code, Section 6109) has been liberally construed in favor of the extension of the chancery jurisdiction, as can be seen by reference to many cases in our reports, yet we have declined to apply it to others which, while falling within the words

of the statute, were so exceptional in character as
to preclude the idea that they were within its
intent. · It has been held that a Chancery Court
has not jurisdiction to try an issue of *devisavit*
*vel non,* although presented in connection with mat-
ters proper for equitable cognizance. *Simmons* v.
*Leonard,* 89 Tenn., 622. It has also been held
that it has not jurisdiction to condemn land levied
upon by execution from Justices' courts. And in
*Anderson* v. *Gossett,* 9 Lea, 644 (a case involving
a contested election of Sheriff, and originating after
the Act of 1877), the statement is distinctly made
that such a contest must be made under Section
889 of the Code of 1858, this being Section
1309 of Shannon's Code. It is true this state-
ment was a dictum, and for that reason is not
controlling, but it has much persuasive force.

We are not unmindful of the case of *Morris*
v. *City of Nashville,* 6 Lea, 337. That was a contest
over an election held with regard to the annexa-
tion of new territory to the city of Nashville, and
no other tribunal being provided for trying such
a case, it was held that on the grounds of abuse
and mistake, the Chancery Court might entertain
jurisdiction of it.

That case is no authority in the one at bar.
For here, as has been seen, a tribunal (the Cir-
cuit Court) has been selected by the Legislature
for hearing that contest, and this tribunal, under
the original Act embodied in the Code, had ex-

19 P—35

clusive jurisdiction to try it, and we are entirely satisfied that it was not the purpose of the Act of 1877 to interefere with that exclusive jurisdiction.

It results that the decree of the Court of Chancery Appeals is reversed, and the bill of complainant is dismissed.