Richard Lynn NORTON,
Plaintiff–Appellee,

v.

Don EVERHART, Warden, State
of Tennessee, Defendants–
Appellants.

Supreme Court of Tennessee,
at Knoxville.

Jan. 30, 1995.

Rehearing Denied March 20, 1995.

John C. Burgin, Jr., Kramer, Rayson, Leake, Rodgers & Morgan, Knoxville, for plaintiff-appellee.

Charles W. Burson, Atty. Gen. & Reporter, and Joel W. Perry, Asst. Atty. Gen., Nashville, for defendants-appellants.

## OPINION

DROWOTA, Justice.

The State of Tennessee appeals from the Court of Appeals' reversal of the trial court's dismissal of Richard Norton's petition for a writ of habeas corpus, which alleged that the Board of Paroles had illegally revoked his parole. This case presents the following procedural issues for our determination: (1) whether the Court of Criminal Appeals was correct in holding that the trial court had the inherent authority and duty to convert petitioner's request for relief from its incorrect form, that of habeas corpus, to the correct form of certiorari and thereafter transfer the case to the Davidson County courts, which have the exclusive jurisdiction to review actions of the Board of Paroles; and (2) whether the Court of Criminal Appeals was correct in holding that the doctrine of "equitable tolling" served to allow petitioner to refile his otherwise untimely request for relief in Davidson County.

### FACTS AND PROCEDURAL HISTORY

On May 18, 1989, Richard Norton was convicted of aggravated and simple assault; he was sentenced to serve ten years in the Department of Corrections. On January 31, 1991, Norton was paroled with special conditions, one of which being that he abstain from the excessive use of intoxicants. . On

March 7, 1991, Beatrice Norton, Norton's ex-wife, complained to the Greene County Sheriff's Department that Norton was extremely drunk and would not vacate her residence. Officer Ronnie Dixon investigated the call and woke Norton from a dead sleep to inform him that his ex-wife wanted him to leave the residence. Officer Dixon believed that Norton was indeed drunk at that time; and this belief was apparently brought to the attention of the Board of Paroles.

As a result of this occurrence, The Board of Paroles issued a parole violation warrant on March 27, 1991. At the revocation hearing on June 6, 1991, Norton argued that he was not drunk at the time the Sheriff found him, but that he had worked late the previous evening and had therefore been sleeping heavily at the time the officer awakened him. Ms. Norton also testified at the hearing that Norton had not been drunk at the time; she explained that she had called the sheriff because she suspected that Norton was having an affair with another woman and was angry at him. After the completion of the testimony, the hearing officer recommended to the Board of Paroles that Norton's parole be revoked. The Board subsequently voted to revoke the parole based on the hearing officer's recommendation. Norton was informed of the Board's decision by letter postmarked July 8, 1991. Norton then requested review of the Board's decision; but that request was denied by the Board in a letter dated August 5, 1991.

On August 28, 1991, Norton filed a pro se petition for a writ of habeas corpus in the Morgan County Criminal Court. In the petition Norton basically repeated the arguments he had advanced at the revocation hearing; and he specifically requested a "fast and speedy hearing" on the petition. On November 12, 1991, after hearing nothing concerning his petition, Norton filed a petition for a writ of mandamus in the Morgan County Circuit Court, requesting that Court to hold the Morgan County Criminal Court in contempt for failing to act on the habeas corpus petition.

On January 14, 1992, the Morgan County Criminal Court dismissed Norton's petition. In its order the Court first stated that Norton did not allege that his conviction was void or that his term of imprisonment had expired—the only circumstances in which habeas corpus relief is available. The Court further stated that because Norton was merely alleging that his parole had been illegally revoked, his sole remedy would be to file a petition for a writ of certiorari. The Court then concluded that, because all actions for review of the actions of the Board of Paroles must be filed in Davidson County, it did not have subject matter jurisdiction over the case. Therefore, the Court dismissed the petition; and Norton appealed from its decision to the Court of Criminal Appeals.

The Court of Criminal Appeals reversed the decision of the trial court. Initially, the Court agreed with the trial court that a writ of certiorari is the proper pleading by which to challenge a parole revocation, and that the courts of Davidson County have the exclusive jurisdiction to entertain a petition for a writ of certiorari to the Board of Paroles. However, the Court also noted that determining the proper procedure for challenging a parole revocation was by no means a simple task; rather, it stated that the necessary analysis of the applicable statutes and case law, some of which is conflicting, was "daunting even to someone with a legal education." In light of these procedural obstacles, the relaxed standards applicable to pro se pleadings, and the settled rule that a pleading is to be given effect with regard to its content, the Court held that the Morgan County Criminal Court should have converted the habeas corpus petition into a certiorari petition and transferred it to a proper court in Davidson County.

The Court alternatively held that even if the trial court had no authority to transfer the matter, the doctrine of "equitable tolling" would permit Norton to file a petition for a writ of certiorari in Davidson County despite the fact that the sixty day statutory period of limitations applicable to writs of certiorari had expired.

The State of Tennessee applied for permission to appeal pursuant to Rule 11, Tenn. R.App.P. We granted the application to address these important procedural issues.

## I.

■ We first address the propriety of the Court of Criminal Appeals' holding regarding the trial court's inherent authority and duty to convert the petition to its proper form and to transfer it to the proper court. Initially, we note that there is no problem with the first part of the Court's holding—that the trial court should have treated the petition as one for a writ of certiorari. It is well settled that a trial court is not bound by the title of the pleading, but has the discretion to treat the pleading according to the relief sought. *Fallin v. Knox County Board of Commissioners,* 656 S.W.2d 338, 342 (Tenn.1983); *State v. Minimum Salary Dep't. of A.M.E. Church,* 477 S.W.2d 11, 12 (Tenn.1972).

■ The part of the Court's holding regarding the inherent authority of the trial court to transfer is, however, extremely problematic. The general rule governing transfer is that a court lacking subject matter jurisdiction over a case has no authority to transfer it, unless that authority is specifically conferred by statute, rule, or constitutional provision. *See* C.J.S. *Courts* § 195 (1990); Wright and Miller, Federal Practice and Procedure, § 3827 (1973). This rule is for all practical purposes universally adhered to,[1] and although it was not cited by any of the parties, this Court has explicitly adopted this position in *Coleman v. Coleman,* 190 Tenn. 286, 229 S.W.2d 341 (1950).

In *Coleman* a couple obtained a divorce in the Shelby County Circuit Court. When Mrs. Coleman later filed an action concerning child support in the Shelby County Chancery Court, Mr. Coleman filed a cross-bill, requesting that he be granted custody of the child. The chancellor refused to rule on the cross-bill, noting that a statute conferred exclusive jurisdiction over custody matters to the court in which the divorce was originally granted—in this instance the Shelby County Circuit Court. The chancellor did, however, order the case transferred to that court.

On appeal this Court reversed the chancellor's decision, reasoning as follows:

We have been unable to find any statute which authorizes the chancellor to transfer this cross-bill to the Circuit Court for further proceedings there with reference to the custody of this child. Nor have we been able to find any opinions of this Court so holding ...

There are several situations in this state in which one court without jurisdiction of a given cause is authorized without consent of the parties to transfer that cause to a court having jurisdiction. But that authority is in each instance given by statute ...

The fact that statutes were considered necessary to authorize transfers by a court without jurisdiction to a court with jurisdiction implies lack of authority to order such transfer in the absence of statutory authority, and the courts seem to have so regarded it. By way of illustration, Code, § 9110 provides that where a suit is dismissed for want of jurisdiction costs should be adjudged against the party attempting to institute such suit. The reason for the enactment of that statute was because the courts were of the opinion that in the absence of jurisdiction of a given cause there was no authority to adjudge costs. [citation omitted]. Another illustration is in the practice of the Supreme Court in cases which should have been appealed to the Court of Civil Appeals. Until the enactment of a statute authorizing the transfer of the cause to the Court of Appeals this Court simply dismissed the cause for want of jurisdiction. [citation omitted].

We are of the opinion that since there is no statute authorizing the Chancery Court to transfer this cause to the Circuit Court, it was without authority of its own motion to order the transfer or to do more with reference to the cross-bill than to dismiss it for lack of jurisdiction and adjudge the costs against the cross-complainant.

*Coleman,* 229 S.W.2d at 343–44.

This Court has continued to apply the rule set forth in *Coleman.* For example, in *Flowers v. Dyer County,* 830 S.W.2d 51 (Tenn.

---

1. *See e.g., Ross v. Richland Co.,* 270 S.C. 100, 240 S.E.2d 649, 650–51 (1978); *Fox v. Board of Regents of University of Michigan,* 375 Mich. 238, 134 N.W.2d 146, 148 (1965); *Caudell v. Leventis,* 43 So.2d 853, 855 (Fla.1950); *First Nat'l. Bank of Chicago v. United Air Lines,* 190 F.2d 493, 496 (7th Cir.1951); *Raese v. Kelly,* 59 F.R.D. 612, 615–16 (D.W.Va.1973).

1992), we were faced with the issue of whether the plaintiff's lawsuit against Dyer County, which was brought under the Governmental Tort Liability Act (GTLA), was due to be dismissed because the plaintiff had filed the action in the chancery court and the GTLA specifically provides that actions are to be filed in circuit court. We held that the action should not be dismissed and ordered the chancery court to transfer the case to the circuit court. However, we did not base our holding upon any inherent power of the chancery court. Rather, we determined that the general statute governing the jurisdiction of circuit and chancery courts, Tenn.Code Ann. 16–11–102, mandated the transfer.

Because *Coleman* clearly establishes that a court lacking subject matter jurisdiction may not transfer a case in the absence of statutory authority, and because it is undisputed that only the courts of Davidson County have the necessary subject matter jurisdiction to review the actions of a state agency, *Tennessee Real Estate Commission v. Potts*, 221 Tenn. 585, 428 S.W.2d 794, 797 (1968), the Court of Criminal Appeals erred in holding that the trial court had the authority to transfer this case to a Davidson County court.

While we hold that trial courts do not possess the inherent authority to transfer cases in the absence of statutory authority, we nevertheless agree with Norton's argument that both judicial economy and our state's policy of disposing of cases on the merits, rather than for technical reasons, would be better served by the adoption of a rule allowing courts without subject matter jurisdiction to transfer the case to any proper court. We note that several jurisdictions, including for example the United States and Louisiana, *see* 28 U.S.C. § 1631 and Louisiana Code Civ. Art. 932, have recognized this and have enacted broad transfer statutes. We further note that our current statutes regarding transfer, when considered cumulatively, nearly constitute such a broad rule. For example, an old transfer statute, Tenn. Code Ann. § 16–11–201, provides that "[a]ny cause pending in the chancery court may be transferred, by consent of the parties, to the chancery court of another county." Also, the

1977 amendment to another old transfer statute, § 16–11–102, which addresses the transfer of cases between the chancery court and the circuit court in the same county, has been construed in *Flowers, supra,* to provide for a mandatory transfer if an objection is made to the jurisdiction of the chancery court. Moreover, § 16–2–107, which was enacted in 1991, provides that:

> In judicial districts which have a separate circuit and chancery court or in districts which have more than one (1) division of circuit or chancery court, if a civil cause of action is filed in the improper court or the improper division of court within the judicial district, upon the motion of either party, *or upon the court's own motion, such cause of action may be transferred to the proper court or proper division within such district.*

(emphasis added).

Because a clear liberalizing trend in our transfer statutes can be discerned, and because a broad provision authorizing a court without subject matter jurisdiction over a case to transfer the case to any proper court would promote judicial economy and the policy of disposing of cases on the merits, we invite the legislature to enact a broad transfer statute.

## II.

We next address the Court of Criminal Appeals' holding with regard to the doctrine of "equitable tolling." First, we note that the Court cited substantial portions of a decision by the Florida Supreme Court, *Machules v. Department of Administration,* 523 So.2d 1132 (Fla.1988), as primary support for its holding. Therefore, we must examine this case in some detail.

In *Machules* the plaintiff was terminated on February 4, 1985, from his position with the Florida Department of Insurance. Under Florida administrative law, Machules had 20 days to appeal his termination to the Department of Administration (DOA). On the day of his termination, Machules took his notice of termination to the employees' union, who immediately filed a contractual grievance with the employer on his behalf. The hearing for the grievance was set by the

employer for February 25, 1985, one day after the 20 day statutory period of limitations was to expire.

At the February 25 hearing the grievance was denied on the ground that Machules's sole remedy was to appeal to the DOA, and the 20 day statutory period of limitations for that remedy had expired. Machules appealed from this decision to the Florida Court of Appeals; but that Court also held that the statutory period of limitations had expired. Machules then appealed to the Florida Supreme Court.

In its analysis the Court first stated that the doctrine of "equitable tolling" was a recognized means of suspending the statutory period of limitations to "ameliorate harsh results that sometimes flow from a strict, literalistic construction and application of administrative time limits contained in statutes and rules." *Machules*, 523 So.2d at 1134. The Court then noted that the doctrine had been applied by numerous federal courts where "the plaintiff has been misled or lulled into action, has in some extraordinary way been prevented from asserting his rights, or has timely asserted his rights in the wrong forum." *Id.* [citations omitted]. In explaining the content of the doctrine, the Court was careful to distinguish it from the doctrine of "equitable estoppel," which requires that the plaintiff's failure to bring the action within the statutory period of limitations be attributable to deception or misconduct on the part of the defendant. The Court then concluded that the doctrine of "equitable tolling" applied to the case because Machules had timely filed his request for relief in the wrong forum, and the employer had acquiesced in his pursuit of the incorrect remedy.

After citing certain passages from *Machules* concerning the content of the doctrine, the Court of Criminal Appeals asserted that "the doctrine of equitable tolling has been recognized in Tennessee when the litigant has acted in good faith and the opponent is not prejudiced by the tolling." However, the two Tennessee cases cited by the Court to support this assertion—*Green v. Prince*, 53 Tenn.App. 541, 385 S.W.2d 127 (1964), and *Dukes v. Montgomery Co. Nursing Home*, 639 S.W.2d 910 (Tenn.1982)—do not involve "equitable tolling" in the *Machules* sense. *Green* involved the application of the "savings statute," Tenn.Code Ann. § 28–1–105, to a specific set of facts. *Dukes* is somewhat more analogous, but that case actually involves the doctrine of "equitable estoppel," which, as noted by the *Machules* court, differs from "equitable tolling" in that it requires the defendant to have misled the plaintiff into failing to file the action within the statutory period of limitations. Therefore, although both *Green* and *Dukes* involve situations in which the expiration of a statute of limitations is excused for equitable reasons, neither can be said to have recognized the broad concept of "equitable tolling" as an independent legal doctrine.

In fact, our research has not revealed that the doctrine of "equitable tolling" has ever been judicially recognized in Tennessee. While this fact, standing alone, does not preclude our adoption of the doctrine, we believe that our existing doctrine of "equitable estoppel," with its requirement that the opposing party have engaged in misconduct, more appropriately strikes the balance between the need for predictable procedural rules on the one hand and the need to relieve innocent parties of the consequences of the expiration of the limitations period on the other. Because we cannot approve of the breadth of the doctrine of "equitable tolling," we must reject the Court of Criminal Appeals' alternative holding.

Although we cannot approve the reasoning of the Court of Criminal Appeals, this does not necessarily mean that it reached an erroneous result. *See Chambers v. Chambers*, 92 Tenn. 707, 23 S.W. 67, 68 (1893). In fact, there are several considerations in this case which, notwithstanding our disagreement with the Court of Criminal Appeals, compel us to affirm the result reached by that Court.

First, we note that although the habeas corpus petition filed by Norton was not the appropriate vehicle for the relief sought, it was in a sense "proper" because it complied with all the filing requirements of a habeas corpus petition. We further note that trial courts in Tennessee are charged

with the statutory duty to give petitions for habeas corpus the highest priority of any pleading. Tenn.Code Ann. § 29–21–108(a) provides that "[i]t is the duty of the court or judge to act upon such applications *instanter.*" (emphasis added). The adverb "instanter" means "immediately, forthwith, without delay." *Rippey v. State,* 132 Tex. Crim. 415, 104 S.W.2d 850, 851 (1937). *See also St. Bernard v. Shane,* 220 F. 852, 853 (6th Cir.1915), and Black's Law Dictionary 799 (6th ed. 1990).

Because the Morgan County Criminal Court held Norton's petition for more than four months before issuing a ruling, it obviously failed to perform even a loosely defined version of its statutory duty. The fact that the petition actually had no merit is irrelevant; the trial court was still under a duty to rule on the petition in an expedited fashion. And it is undisputed that the trial court's departure from the dictates of the statute had disastrous consequences for Norton. Because his parole revocation became final on August 5, 1991 (when the Board of Paroles denied Norton's request for "appellate review"), Norton was required to petition for a writ of certiorari by October 4, 1991. If the trial court had dismissed his habeas corpus petition within one week, two weeks, or even one month, Norton would still have had time to refile in Davidson County. However, because the trial court did not perform its statutory duty, Norton was completely deprived of a remedy.

Rule 36(a) of the Tennessee Rules of Appellate Procedure confers upon this Court the power to grant any relief the proceeding requires, as long as that relief does not contravene the province of the trier of fact. In light of the procedural obstacles facing pro se litigants attempting to challenge parole revocations, the clear policy of this state favoring the adjudication of disputes on their merits, and the fact that Norton by no means slept on his rights, we believe that this is an appropriate case to invoke our authority under Rule 36(a). Therefore, we hold that Norton be allowed to file a petition for a writ of certiorari in Davidson County. The judgment of the Court of Criminal Appeals is hereby affirmed.

O'BRIEN, C.J., and REID, ANDERSON and BIRCH, JJ., concur.