

FILED
05/03/2017
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 3, 2017



**IN RE TYLER G.**

**Appeal from the Circuit Court for Robertson County**
**No. 74CC12016CV91      Ross H. Hicks, Judge**

_____

**No. M2016-02170-COA-R9-PT**

_____

This interlocutory appeal concerns whether the circuit court may sever a termination of parental rights proceeding from an adoption proceeding, which were filed together in the circuit court, and transfer only the termination of parental rights proceeding to the juvenile court in another county. Reversed and remanded.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Jennifer L. E. Williams, Springfield, Tennessee, for the appellants, Nita T. and Myers T. Jr.

John B. Holt, Springfield, Tennessee, for the appellee, Amanda R.

Zale Dowlen, Goodlettsville, Tennessee, Guardian ad Litem.

**OPINION**

**Background**

On October 5, 2005, Petitioners/Appellants Nita T. and Myers T, Jr.[1] ("Grandparents") were granted legal custody of the Tyler G. and Hanna G. (together, "the children") by the Gibson County Juvenile Court. This matter was subsequently transferred to the Lauderdale County Juvenile Court sometime in 2006 for further proceedings, which involved visitation, custody, and contempt issues between the parties

_____

[1] In termination of parental rights cases, it is the policy of this Court to remove the names of minor children and other parties in order to protect their identities.

for a number of years.[2]  At some point, the children were adjudicated dependent and neglected; however, it is unclear from the record which of these two courts made this determination.  It does not appear from the record that the Tennessee Department of Children's Services was ever involved in the case.

From what we can discern based on the exhibits provided to us in the record, Grandparents requested that the Robertson County Juvenile Court exercise emergency temporary jurisdiction in the fall of 2015.  An emergency order was subsequently issued by the Robertson County Juvenile Court.[3]  After a telephonic conversation with the judge of the Lauderdale County Juvenile Court, the Robertson County Juvenile Court entered an order on November 19, 2015, transferring the case file to the Lauderdale County Juvenile Court.  A corresponding jurisdictional order was entered on the same day by the Lauderdale County Juvenile Court, vacating the emergency order and asserting its exclusive jurisdiction.

According to Grandparents, Respondent/Appellee Amanda R. ("Mother") has not lived in Lauderdale County for a number of years, and Grandparents and the children have continually lived in Robertson County ever since they obtained legal custody of the children in 2005.[4]  As a result, on February 25, 2016, Grandparents filed a petition for termination of parental rights and adoption against Mother and Respondent Terry G. ("Father") as to the children in the Robertson County Circuit Court ("Robertson County Circuit Court" or "trial court").   On May 3, 2016, the trial court entered an order granting Grandparents' motion for default judgment against both parents.  Mother filed a motion to vacate the judgment and an answer to the petition on May 19, 2016, which the trial court granted by order of July 5, 2016.  Because Father never filed any pleadings nor participated in any way, the May 3, 2016 order was never set aside.

Thereafter, Grandparents filed a motion to modify Mother's visitation, the order of which was previously issued by the Lauderdale County Juvenile Court allowing Mother to visit with the children every weekend. A hearing was conducted on June 7, 2016, wherein the trial court heard testimony from the parties and the children's therapist and was informed of the extensive litigation history in this cause.  The trial court granted Grandparents' motion and modified Mother's visitation on a temporary basis, which would be "determined based on the wishes of the children."  The trial court deferred the issue of whether this modification would remain in effect to the Lauderdale County Juvenile Court, which issued the previous visitation order.  The trial court also sua sponte determined that the Lauderdale County Juvenile Court, which "is familiar with the parties [and] the circumstances" of the case, should determine whether the petition for parental

---

[2] It is unclear whether Father participated in any of these proceedings.
[3] It is unclear what relief was requested by Grandparents and what relief was granted in the emergency order.
[4] From the guardian ad litem's brief, it appears that Mother resides in Gibson County.

- 2 -

rights termination should be granted or denied.[5] By order of July 5, 2016, the trial court bifurcated the termination of parental rights from the adoption proceeding and transferred only the termination proceeding to the Lauderdale County Juvenile Court for a hearing, while at the same time retained jurisdiction over the adoption proceeding, which the trial court would hear upon completion of the termination proceeding. Specifically, the trial court's order reasoned as follows:

> The [c]ourt has heard testimony from all parties that this matter has been litigated in [the Lauderdale County Juvenile Court] for over six . . . years. That particular [c]ourt is familiar with the parties, familiar with the circumstances of this cause and is in a better position to make a determination on the issue of a termination of parental rights in this matter. This [c]ourt, by statute, would retain jurisdiction of the adoption proceedings, which shall be stayed pending a determination on the termination proceedings.

Noting that this is a "novel issue," the trial court granted Grandparents permission to file an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, and this Court ultimately granted the request by order of November 28, 2016.

## Discussion

Because of the "novel issue" presented by this case, it is helpful to first discuss the procedural posture of the underlying proceedings leading to this appeal. Here, Grandparents filed a petition in the Robertson County Circuit Court requesting both adoption and termination of parental rights. Rather than dispose of these actions together, the Robertson County Circuit Court chose instead to separate the two actions and transfer only the termination petition to the Lauderdale County Juvenile Court. In reaching this result, which the trial court deemed a "bifurcation" of the proceeding, the trial court noted that the Lauderdale County Juvenile Court had previously been involved in dependency and neglect litigation with the parties for a number of years and therefore was more familiar with the facts at issue.

Although these proceedings are often connected, adoption and termination of parental rights proceedings need not be prosecuted simultaneously in a single action. Indeed, different courts have jurisdiction over these actions. *See, e.g.*, Tenn. Code Ann. § 36-1-113(a) (discussing the fact that parental termination cases may be prosecuted "in a separate proceeding" than adoptions); Tenn. Code Ann. § 36-1-117(a) (discussing the notice to a guardian ad litem required in either an adoption proceeding or in a "a separate proceeding seeking the termination" of parental rights). Termination proceedings may be

---

[5] A transcript of the hearing is not in the record, but, according to Grandparents' appellate brief, which has not been disputed by Mother's appellate brief, no party requested such a transfer.

filed in circuit, chancery, or juvenile courts. Tenn. Code Ann. § 37-1-104(c) ("The juvenile, circuit and chancery courts have concurrent jurisdiction to terminate parental or guardian rights[.]"); *see also* Tenn. Code Ann. § 36-1-113(a) ("The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding[.]"). Where more than one court has jurisdiction over an action, their jurisdiction is concurrent. *See Black's Law Dictionary* (10th ed. 2014) (defining concurrent jurisdiction as "[j]urisdiction that might be exercised simultaneously by more than one court over the same subject matter and within the same territory, a litigant having the right to choose the court in which to file the action"). In contrast, only circuit and chancery courts have concurrent jurisdiction over adoption proceedings. Tenn. Code Ann. § 16-11-110 ("The chancery court has jurisdiction, concurrent with the circuit court, of all proceedings for divorce and for the adoption of children.").

Under the common law, however, concurrent jurisdiction does not continue for the life of an action. Instead, once an action is filed, the court acquires exclusive jurisdiction until the conclusion of the case. "It is the rule in Tennessee that the [c]ourt which first acquires the matter, takes the exclusive jurisdiction to end the matter." ***Wilson v. Grantham***, 739 S.W.2d 776, 777 (Tenn. Ct. App. 1986) (citing ***Robinson v. Easter***, 208 Tenn. 147, 344 S.W.2d 365 (1961); ***Tallent v. Sherrell***, 27 Tenn. App. 683, 184 S.W.2d 561 (1944); ***Spencer v. Goodlett***, 104 Tenn. 648, 58 S.W. 322 (1900)). "[E]xclusive jurisdiction" means "[a] court's power to adjudicate an action or class of actions to the exclusion of all other courts." *Black's Law Dictionary* (10th ed. 2014). This common law rule has been expanded by statute in adoption proceedings. Indeed, once an adoption petition is filed, the adoption court acquires "exclusive jurisdiction of all matters pertaining to the child[,]" and "jurisdiction of all other pending matters concerning the child . . . shall be transferred to and assumed by the adoption court[,]" subject to certain exceptions not present here. Tenn. Code Ann. § 36-1-116(f). This rule applies even where a dependency and neglect proceeding was ongoing in juvenile court at the time the adoption was filed. *See* Tenn. Code Ann. § 37-1-103(c) (providing that juvenile court's exclusive jurisdiction is terminated upon the filing of an adoption petition). As such, there can be no dispute that once Grandparents filed their adoption and termination petition, the trial court acquired exclusive jurisdiction over this matter to the exclusion of all other courts, including the Lauderdale County Juvenile Court.

Often, cases discussing exclusive jurisdiction involve an action by a competing court where another court has concurrent jurisdiction over the matter. In those cases, the action of the competing court interfering with another court's exclusive jurisdiction is void. *See, e.g.*, ***J.W.G. v. T.L.H.G.***, No. M2002-02656-COA-R3-JV, 2003 WL 22794537, at *4 (Tenn. Ct. App. Nov. 25, 2003) (quoting ***Branch v. Thompson***, No. M1998-00511-COA-R3-CV, 2000 WL 898759, at *3 (Tenn. Ct. App. July 7, 2000)) ("[O]nce the juvenile court has invoked its exclusive jurisdiction, 'any subsequent order concerning custody entered by the court having jurisdiction over the original divorce

proceeding is void.'"); ***State of Tenn. Dep't of Human Servs. v. Gouvitsa***, 735 S.W.2d 452, 457 (Tenn. Ct. App. 1987) (holding that the action of the circuit court was void where the juvenile court retained exclusive jurisdiction over the children). In this case, however, the trial court, having acquired exclusive jurisdiction over this matter, determined that it would consent to a transfer of some of that authority to the Lauderdale County Juvenile Court, ostensibly on the basis of judicial efficiency. Neither party cites any cases specifically discussing the authority of a circuit court with exclusive jurisdiction to transfer a portion of its authority to another court. Cases involving other courts, however, suggest that such a transfer is not permitted.

For example, in ***State v. George***, 968 S.W.2d 896 (Tenn. Crim. App. 1997), the juvenile court acquired exclusive jurisdiction over proceedings concerning the child by virtue of a dependency and neglect action. ***Id.*** at 898. Pursuant to statute at the time, the juvenile court's jurisdiction only terminated when the child reached the age of majority. *See* ***Terry v. Botts***, No. E2000-01288-COA-R3-CV, 2001 WL 173207, at *6 (Tenn. Ct. App. Feb. 22, 2001) (quoting the then in-effect version of Tennessee Code Annotated section 37-1-103(c) and noting that "once juvenile court has jurisdiction over a person, that person remains subject to the juvenile court jurisdiction until the age of eighteen"). When one party filed a petition for custody in the chancery court, the juvenile court "attempted to transfer the proceedings to the chancery court" to allow the chancery court to enter a temporary restraining order. ***Id.*** After a party later violated the restraining order, the Court of Criminal Appeals held that it was void. As the court explained: "jurisdiction cannot be conferred to a chancery court or circuit court sua sponte or by consent of the parties" in the absence of a statute specifically authorizing such a transfer. ***Id***. Several other courts have come to similar conclusions regarding the transfer of authority over a case from the juvenile court to another court when the juvenile court had acquired exclusive jurisdiction over matters concerning the child. *See, e.g.*, ***George v. George***, No. 02A01-9711-CH-00279, 1999 WL 252710, at *4 n.1 (Tenn. Ct. App. Apr. 28, 1999) (noting that, although the record "suggests that the juvenile court deemed its role in [the child's] custody to be concluded upon the entry of its . . . order [adjudicating the dependency and neglect matter], and that it deemed any further proceedings concerning [the child's] custody to be matters for the chancery court to resolve," any argument that the juvenile court effectively conferred such jurisdiction would have been unsuccessful); ***Hicks v. Hicks***, No. 01A01-9309-CH-00417, 1994 WL 108896, at *2 (Tenn. App. Mar. 30, 1994) (holding that the chancery court's order concerning the issue of the custody of the children was void based on lack of subject matter jurisdiction despite the fact that the juvenile court ordered the transfer of jurisdiction); ***Simpkins v. Greer***, No. 01-A-01-9202-CH00060, 1993 WL 18311, at *3 (Tenn. App. Jan. 29, 1993) (holding that the chancery court lacked subject matter jurisdiction despite the parties' consent to have the matter transferred from juvenile court because the juvenile court acquired exclusive jurisdiction). An older case from the Tennessee Supreme Court, however, appears to suggest the opposite result. *See* ***Kidd v. State ex rel. Moore***, 207 Tenn. 244, 252, 338 S.W.2d 621, 625 (Tenn. 1960) (holding that the "no other court had

or has any right or power whatever thereafter to change its custody or to make any orders in regard thereto, **except with the consent** of the Juvenile and Domestic Relations Court exercising its jurisdiction as a Juvenile Court").[6]

In response to the juvenile court's apparent inability to effectuate a transfer of its exclusive jurisdiction to another court, the Tennessee General Assembly amended Tennessee Code Annotated section 37-1-103(c) in 2001 by adding additional ways in which the juvenile court may divest itself of its exclusive jurisdiction, including allowing the juvenile court to transfer the matter "to another juvenile, circuit, chancery or general sessions court exercising domestic relations jurisdiction[.]" Tenn. Code Ann. § 37-1-103(c); *see also* 2001 Pub. Acts, c. 297, § 1, eff. July 1, 2001 (amending Tenn. Code Ann. § 37-1-103(c)). Unlike the transfer statute now applicable to juvenile courts, no similar transfer statute allows a transfer from circuit court to juvenile court when both a termination and adoption petition have been filed in circuit court. At least one case, however, has suggested that a court exercising exclusive jurisdiction pursuant to an adoption cannot share that jurisdiction with a juvenile court that had previously had jurisdiction over the children. *See Matter of Adoption of K.A.M.*, No. 03A01-9112-CH-420, 1992 WL 110789, at *1 (Tenn. Ct. App. May 27, 1992) (citing *In Re Adoption of Hutto*, 777 S.W.2d 353 (Tenn. App. 1989)) (vacating the chancery court's order decreeing that the chancery court and the juvenile court had concurrent jurisdiction over the custody and placement of the children and reinstating the chancery court's previous order assuming exclusive jurisdiction upon the filing of the adoption petition).

We note, however, that unlike the circuit court, juvenile courts are courts of

_____

[6] This Court in *Simpkins* specifically addressed the conflict between its holding and the holding in *Kidd*. *See Simpkins*, 1993 WL 18311, at *3. As the *Simpkins* Court explained:

> We think, however, that the dictum in *Kidd v. State*, cannot be taken as authority for the proposition that a juvenile court can confer jurisdiction on another court simply by entering an order of transfer. It is clear that the parties cannot confer subject matter jurisdiction on the court by consent. *See Curtis v. Garrison*, 211 Tenn. 339, 346, 364 S.W.2d 933, 936 ([Tenn.] 1963); *James v. Kennedy*, 174 Tenn. 591, 595, 129 S.W.2d 215, 216 ([Tenn.] 1939). We think it is equally clear that a court cannot confer subject matter jurisdiction on another court. Tenn. Const. art. 6, § 1 grants the legislature the power to determine how many and what kinds of courts are required for the administration of justice and the power to fix the limits of each court's jurisdiction. *See State ex rel. Ward v. Murrell*, 169 Tenn. 688, 692, 90 S.W.2d 945, 946 ([Tenn.] 1936). Courts possess "only such jurisdictional powers as are directly, or indirectly, expressly or by implication, conferred upon [them] by the constitution or legislation of the sover[e]ignty on behalf of which [they] function." 20 Am. Jur. 2d *Courts* § 91 (2d ed. 1965); *see also Coonradt v. Sailors*, 186 Tenn. 294, 305, 209 S.W.2d 859, 863 ([Tenn.] 1948); *McHenry's Lessee v. Wallen*, 10 Tenn. 441, 444 ([Tenn.] 1830).

*Simpkins*, 1993 WL 18311, at *3.

limited jurisdiction. *See **In re D.Y.H.***, 226 S.W.3d 327, 330 (Tenn. 2007) (citing ***Stambaugh v. Price***, 532 S.W.2d 929, 932 (Tenn. 1976)). Their power, then, is derived solely by statute. ***Id.*** (citing ***In re S.L.M.***, 207 S.W.3d 288, 296 (Tenn. Ct. App. 2006)). The same is not true of the circuit court, which has inherent power not expressly conferred by statute. *See* Tenn. Code Ann. § 16-10-101 ("The circuit court is a court of general jurisdiction, and the judge of the circuit court shall administer right and justice according to law, in all cases where the jurisdiction is not conferred upon another tribunal."). Indeed, it is well-settled that Tennessee courts of general jurisdiction are afforded broad inherent authority over their court proceedings. *See **Hodges v. Attorney Gen.***, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). The extent of the trial court's inherent authority has been a subject of much scholarly debate. *See generally* Felix F. Stumpf, *Inherent Powers of the Courts* 1 (1994) (quoting Stephen B. Burbank, *Sanctions in the Proposed Amendments to the Federal Rules of Civil Procedure: Some Questions About Power*, 11 Hofstra L. Rev. 997, 1004 (1983)) (noting that, while the inherent power of the courts has been extensively exercised, "learned writers have described the concept as . . . 'a problem of definition that has eluded or bedeviled many courts and commentators for years'"). To be sure, Tennessee courts have inherent power to control their own dockets, *see **State v. Benn***, 713 S.W.2d 308, 310 (Tenn. 1986), to enforce their judgments, *see **State ex rel. Stall v. City of Knoxville***, 365 S.W.2d 433, 435 (Tenn.1963), and to punish for contempt, *see **Baker v. State***, 417 S.W.3d 428, 435 (Tenn. 2013). Of course, this inherent power is not without limits. *See **Shields v. Davis***, 103 Tenn. 538, 53 S.W. 948, 950 (1899) ("While a circuit court has the inherent power to adopt general rules for the orderly and expeditious discharge of business, yet with regard to the institution of suits properly falling within its jurisdiction, as well as their conduct, either the common law or else the statute regulates the practice, and leaves, so far as the successive steps in their progress are concerned, nothing to the discretion of the judge."). The Tennessee Supreme Court has specifically held that where a court has no subject matter jurisdiction over the action, its inherent authority does not confer the court the power to transfer the matter to the appropriate court absent specific statutory authority. *See **Norton v. Everhart***, 895 S.W.2d 317, 319–20 (Tenn. 1995) ("[A] court lacking subject matter jurisdiction over a case has no authority to transfer it, unless that authority is specifically conferred by statute, rule, or constitutional provision.").[7] From our research, however, this holding was limited only to transfers by courts without jurisdiction over the subject matter of the action; here, the circuit court undisputedly had jurisdiction over both the adoption and termination actions involved in Grandparents' petition.

---

[7] The ***Norton*** Court noted that its decision did not further our state's policies of judicial economy or disposing of cases on the merits. ***Norton***, 895 S.W.2d at 320. As such, the Tennessee Supreme Court encouraged the Tennessee General Assembly to enact a statute allowing such a transfer to further these goals. ***Id.*** The Tennessee General Assembly accepted the Tennessee Supreme Court's invitation and enacted Tennessee Code Annotated section 16-1-116, which became effective May 23, 2000. This statute allows a court without subject matter jurisdiction to transfer a matter to the appropriate court. *See generally* Tenn. Code Ann. § 16-1-116.

Even assuming, arguendo, however, that the trial court had the authority to consent to a transfer of its jurisdiction to the juvenile court, we cannot agree that judicial efficiency supports the trial court's action here. First, we question whether the trial court's action constitutes a bifurcation of the underlying proceeding, despite the trial court's characterization of its action as such. Generally, to "bifurcate" means "[t]o separate into two parts, esp[ecially] for convenience." *Black's Law Dictionary* (10th ed. 2014). Accordingly, "[m]ultiple aspects of litigation, such as discovery, motions, defenses, trial, and jury deliberations, may be bifurcated to save time, reduce jury confusion, or achieve other benefits, with or without the same jury hearing both bifurcated parts." *Id.* Neither the trial court nor Mother cite any law to suggest that bifurcation may include the separation of a single petition into multiple actions across multiple courts in multiple counties. Rather, in this Court's estimation, the term bifurcation is generally used to connote merely allowing multiple parts of an action to be heard serially, rather than simultaneously. *See, e.g.*, **Wilson v. Americare Sys., Inc.**, 397 S.W.3d 552, 557 (Tenn. 2013) (noting that, after the jury found by clear and convincing evidence that defendant acted with the requisite intent that triggered a second, bifurcated punitive damages proceeding, the same jury proceeded to award plaintiffs punitive damages against the defendant); **In re Keri C.**, 384 S.W.3d 731, 737 (Tenn. Ct. App. 2010) ("The trial court decided to bifurcate the trial[.] The initial proceeding would be on grounds for termination of Mother's parental rights. If needed, a second hearing on the child's best interest would be conducted [by the same court]."); **Bishop v. State**, 563 S.W.2d 913, 915 (Tenn. Crim. App. 1978) (rejecting defendant's argument that, after he was found guilty of the first charge, he should have been allowed to qualify the jury again before it heard evidence relating to his second charge and noting that "[t]he same jury is required to hear both facets of the bifurcated proceedings, and was found initially to be qualified"); *cf.* **Burnette v. Pickel**, 858 S.W.2d 319, 321 (Tenn. Ct. App. 1993) (declining to consider whether the circuit court had the authority to bifurcate the issues and transfer only the boundary line dispute to the chancery court in the same county while retaining the tort claims because appellant never made an objection in the court below).

Moreover, we are concerned about the practical effect of the trial court's order. As previously discussed, juvenile courts have original jurisdiction to hear termination actions but not adoption petitions. *See* Tenn. Code Ann. § 36-1-113(a); Tenn. Code Ann. § 37-1-104(c). Accordingly, in entering its order, the trial court here necessarily ruled that these actions would be adjudicated separately, as the adoption petition was required to remain in circuit court. Despite the trial court's clear intention to effectuate this separation, the trial court's order does not discuss the consequences of such a separation.

As previously discussed, a bifurcation typically does not sever the bifurcated issues from one another for purposes of final adjudication of the matter. Instead, all issues must be determined to achieve a final judgment in such a case, unless the determination of one issue pretermits others. *See* Tenn. R. App. P. 3(a) (providing that a judgment is not final where it "adjudicates fewer than all the claims or the rights and liabilities of fewer

than all the parties"). Were this Court to treat this matter as bifurcated in the usual sense, then any order entered in the termination proceeding would not be final and appealable until an order was also entered in the adoption proceeding. Moreover, we doubt that the entirety of a termination petition could be referred to a Special Master, as that matter is a main issue in controversy. *See **Ingram v. Stein***, 126 S.W.2d 891, 892 (Tenn. Ct. App. 1938)) ("The main issues of a controversy and the principles on which these issues are to be adjudicated must be determined by the trial court."); *see also **Archer v. Archer***, 907 S.W.2d 412, 416 (Tenn. Ct. App. 1995)) ("'Collateral, subordinate, and incidental issues and the ascertainment of ancillary facts are matters properly referred to a special master.'").

If, however, the termination petition were to be adjudicated as a separate matter, it could result in two separate appeals to this Court on Grandparents' single petition. Although termination petitions may be filed separately from adoptions, *see* Tenn. Code Ann. § 36-1-113(a); Tenn. Code Ann. § 36-1-117(a), we cannot discern how separate appeals on a single petition that was properly filed in a single court furthers judicial economy. Indeed, pursuant to Tennessee Code Annotated section 36-1-124(a), trial courts "shall . . . expedite the contested termination or adoption proceeding . . . and such case shall be given priority in setting a final hearing of the proceeding and shall be heard at the earliest possible date over all other civil litigation[.]" Rather, the public policy of expediting termination and adoption litigation is best furthered where the entire case is adjudicated by one court, if possible.

Finally, as argued by Grandparents in their brief, it does not appear the Lauderdale County Juvenile Court is an appropriate venue for Grandparents' termination action, even had the petition been initially been filed in that court. "Venue . . . is a concept based on privilege of and convenience to the parties." ***Meighan v. U.S. Sprint Commc'ns Co.***, 924 S.W.2d 632, 639 (Tenn. 1996) (citing ***Turpin v. Conner Bros. Excavating Co., Inc.***, 761 S.W.2d 296, 297 (Tenn. 1988)). "It is generally not a condition precedent to the court's power, but relates instead to the appropriateness of the location of the action." ***Id.*** Venue in a termination or adoption proceeding is governed by Tennessee Code Annotated section 36-1-114, which states the following:

The termination or adoption petition may be filed in the county:

(1) Where the petitioners reside;
(2) Where the child resides;
(3) Where the child resided when:

(A) The child became subject to the care and control of a public or private child-caring or child-placing agency; or
(B) The child became subject to partial or complete guardianship or co-guardianship pursuant to a surrender proceeding as provided in

- 9 -

this part; or

(4) In which is located any licensed child-placing agency or institution operated under the laws of this state having custody or guardianship of the child or to which the child has been surrendered as provided in this part.

Here, it is undisputed that Grandparents, and the children over whom the Grandparents have custody, have resided in Robertson County for a number of years. It therefore appears that Robertson County was the only available venue under section 36-1-114. Although venue may be waived in certain circumstances, at least one case has reversed a trial court's termination of a parent's parental rights based solely on improper venue, where the issue was timely raised by a party. *See In re B.N.S.*, No. M2003-02524-COA-R3-PT, 2004 WL 892535, at \*4 (Tenn. Ct. App. Apr. 26, 2004) (citing previous version of the venue statute) ("[I]n order for the termination proceeding to continue in Marion County over [mother's] objections, the Department was required to demonstrate that the proceeding fits within one or more of the . . . statutory venue alternatives [then in effect.]").

Based on the foregoing, and the totality of the circumstances, we conclude that the trial court erred in separating Grandparents' termination and adoption actions and transferring only the termination portion of the proceedings to the Lauderdale Juvenile Court. As such, we reverse the trial court's order and remand for the trial court to adjudicate both the termination and the adoption requests contained in Grandparents' petition.

## Conclusion

Based on the foregoing, the judgment of the Robertson County Circuit Court is reversed and this cause is remanded to the trial court. The trial court is directed to adjudicate both the termination of parental rights and adoption proceedings. Costs of this appeal are taxed to the Appellee, Amanda R., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE