Hodge v. State.

JOHN HODGE *v.* THE STATE. *

(*Jackson.*   April Term, 1916.)

1. COURTS.   Establishment. ' Powers of legislature.. "Inferior courts."

Priv. Laws 1915, ch. 78, establishing a criminal court in Dyer county and prescribing its jurisdiction, is within the power conferred on the Legislature by Const. art. 6, sec. 1, declaring the the judicial power shall be vested in the supreme court, and in such circuit, chancery, and other inferior courts as the legislature shall ordain and establish, since the new court is an "inferior court." (*Post, pp.* 528-534.)

Acts cited and construed:   Acts 1915, ch. 78; Acts 1829-30, ch. 95.

Cases cited and approved:   Granville Wilcox v. State, 50 Tenn., 110;   Gray v.. State, 50 Tenn., 113;   Moore v. State, 37 Tenn., 512;   McClain v. State, 1 Shan. Cas., 480;   Re-districting Cases, 111 Tenn., 234;   Railroad v. Byrne, 119 Tenn., 278;   State v. Lindsay, 103 Tenn., 625;   Coleman v. Campbell, 3 Shan. Cas., 355;   Halsey v. Gaines, 70 Tenn., 316;   Shelby Co. v. Judges, 3 Shan. Cas., 525;   Hurt v. Hurt, 70 Tenn., 177;   Miller v. Conlee, 57 Tenn., 432;   Ward v. Thomas, 42 Tenn., 565;   State v. Wilson, 70 Tenn., 211;   Kelly v. Conner, 122 Tenn., 339.

Cases cited and distinguished:   Ellis v. State, 92 Tenn., 85; Bank v. Cooper, 10 Tenn., 599;   Judges' Cases, 102 Tenn., 510; Jackson v. Nimmo, 71 Tenn., 598.

Constitution cited and construed:   Sec. 1, arts. 5, 6;   Sec. 2, art. 6, (1854-1870).

2. JUDGES.   Appointment.   Powers of legislature.

Although Const. art. 11, sec. 17, provides that no county office of legislative creation shall be filled otherwise than by the people or the county court, the legislature may under article 7, sec. 4, providing that the election of all officers and filling

---

*Authorities on the question of the power of legislature to interfere with superintending control over inferior triunals, are gathered, in notes in 51 L. R. A., 111; 20 L. R. A. (N. S.), 946.

of all vacancies not otherwise provided for by Constitution shall be made as the legislature may direct, provide as by Priv. Laws 1915, ch. 78, sec. 12, that the office of judge of the criminal court of Dyer county be filled by appointment until the next general election. (*Post, pp.* 534, 535.)

Acts cited and construed: Acts 1915, ch. 78, sec. 12.

Cases cited and approved: State ex rel. v. Trewhitt, 113 Tenn., 561; Condon v. Maloney, 108 Tenn., 82; State ex rel. v. Maloney, 92 Tenn., 62; Richardson v. Young, 122 Tenn., 471; Re-districting Cases, 111 Tenn., 234; Luehrman v. Taxing Dist., 70 Tenn., 440.

Constitution cited and construed: Art. 11, sec. 17; Art. 7, sec. 4.

3. **CLERKS OF COURTS.** Appointment. Powers of legislature. Priv. Laws 1915, ch. 78, sec. 4, providing that the clerk of the circuit court of Dyer county shall be clerk of the criminal court of such county, does not violate Const. art 6, sec. 13, requiring that clerks of inferior courts be elected by the voters every four years. (*Post, pp.* 535, 536.)

Acts cited and construed: Acts 1915, ch. 78, sec. 4.

Constitution cited and construed: Art. 6, sec. 13.

4. **CLERKS OF COURTS.** Judges. Establishment of offices. Statutes. Validity. Priv. Laws 1915, ch. 78, being intended to relieve the circuit court of Dyer county of certain duties, properly provides by sections 4, 12, that the judge of the county court and clerk of the circuit court shall perform the duties of the criminal court established by the act, and it is unnecessary that a new judgeship and clerkship be established. (*Post, pp.* 536, 537.)

Acts cited and construed: Acts 1915, ch. 78.

Constitution cited and construed: Art. 6, sec. 1 (1870).

5. **STATUTES.** Construction. Acts in pari materia. Priv. Laws 1915, ch. 78, as to criminal court of Dyer county, must be construed *in pari materia* with chapter 82, passed on the same day, creating the office of county judge in such county. (*Post, p.* 537.)

Hodge v. State.

6. **CLERKS OF COURTS. Judges. Holding two offices. "Lucrative office."**

Priv. Laws 1915, ch. 78, secs. 4, 12, providing that the judge of the county court of Dyer county shall act as judge of the criminal court created by the act, and the clerk of the circuit court as clerk of such criminal court, does not violate Const. art. 2, sec. 26, providing that no person shall hold more than one "lucrative office," since the act expressly provides that there shall be no compensation therefor. (*Post, pp.* 537-539.)

Acts cited and construed:  Acts 1915, ch. 78, secs. 4, 12.

Cases cited and approved:  State v. Kirk, 44 Ind., 401; Chambers v. State, 127 Ind., 365;  State ex rel. v. Slagle, 115 Tenn., 336.

Constitution cited and construed:  Art. 2, sec. 26.

7. **JUDGES. Appointment. Powers of legislature.**

Under Priv. Laws 1915, ch. 78, sec. 12, providing that the county judge of Dyer county shall act as judge of the criminal court in that county, no express appointment of such judge to the new office is necessary;  the act itself being sufficient authority. (*Post, p.* 539.)

Constitution cited and construed:  Art. 6, sec. 1.

8. **JUDGES. Statutes. Certainty. Intent of legislature.**

Priv. Laws 1915, ch. 78, sec. 12, providing that the "judge of the court" of Dyer county shall be judge of the criminal court, and receive no other compensation than provided by law for said county judge, clearly shows that the county court was intended, and is not objectionable for omission of "county" before the words "court of Dyer county." (*Post, pp.* 539, 540.)

Acts cited and construed:  Acts 1915, ch. 78, sec. 12.

---

FROM DYER.

---

Appeal from the Criminal Court of Dyer County.—
W. A. FOWLKES, JR., Judge.

COOVER & WARD, for appellant.

WM. H. SWIGGART, JR., Assistant Attorney General, for the State.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

One question presented by this appeal is the constitutionality of chapter 78, Acts of 1915 (see page 239 of Private Acts of that year). Plaintiff in error was convicted of the offense of assault and battery after a trial in the court which the act purports to establish. No bill of exceptions appears in the transcript, and no question is made on the sufficiency of the evidence to sustain the judgment.

Upon the question first above suggested, it is insisted that the general assembly went beyond the power vested in it by the Constitution when it enacted sections 1 and 2 of the act. Section 1 established a criminal court at Dyersburg in the county of Dyer and conferred on the court jurisdiction coextensive with the limits of said county, and section 2 prescribed the character of cases falling within the jurisdiction of the court.

The first section of the sixth article of the Constitution of this State declares, that:

"The judicial power of this State shall be vested in one supreme court, and in such circuit, chancery, and other inferior courts as the legislature shall, from time to time, ordain and establish, in the judges thereof, and in justices of the peace. The legislature may also vest

such jurisdiction in corporation courts as may be deemed necessary; courts to be holden by justices of the peace may also be established.''

The court which section 1 of the act purports to create is an inferior court within the meaning of the above excerpt from the Constitution. It is inferior to the supreme court, in the same sense that circuit and chancery courts are inferior. The Constitution in section 1, article 6, provides for ''one supreme court'' and to distinguish that court from the courts next imediately mentioned, they are classed as inferior courts. The criminal court of Dyer county clearly falls within the classification ''other inferior courts,'' and these courts, when ordained and established by legislative act, are the direct fruits of power conferred by said section of the Constitution on the legislative department of the State. In so holding we announce no new doctrine. See *Granville Wilcox* v. *State,* 50 Tenn. (3 Heisk.), 110; also marginal reference to the case of *Gray* v. *State,* 50 Tenn., 113; *Moore* v. *State,* 37 Tenn. (5 Sneed), 512; *McClain* v. *State,* 1 Shan. Cas., 480; *Ellis* v. *State,* 92 Tenn. (8 Pick.), 85, 20 S. W., 500.

For cases shedding light on the question, see *Redistricting Cases,* 111 Tenn. (3 Cates), 234, 80 S. W., 750; *Judges' Cases,* 102 Tenn. (18 Pick.), 510, 53 S. W., 134; *Railroad* v. *Byrne,* 119 Tenn. (11 Cates), 278, 104 S. W., 460; *State* v. *Lindsay,* 103 Tenn. (19 Pick.), 625, 53 S. W., 950; *Coleman* v. *Campbell,* 3 Shan. Cas., 355; *Halsey* v. *Gaines,* 70 Tenn. (2 Lea), 316; *Shelby County* v. *Judges,* 3 Shan. Cas., 525; *Hurt* v. *Hurt,* 70 Tenn. (2

Lea), 177; *Miller* v. *Conlee,* 37 Tenn. (5 Sneed), 432; *Ward* v. *Thomas,* 42 Tenn. (2 Cold.), 565; *State* v. *Wilson,* 70 Tenn. (2 Lea), 211.

In *Ellis* v. *State,* supra, it was said:

"The power of the legislature to establish special courts, under section 1, article 6, of the Constitution, is well established, and is not denied in this case" (citing some of the authorities).

The brief for appellant relies on *Bank of the State* v. *Charles Cooper et. al.,* 10 Tenn. (2 Yerg.), 599, 24 Am. Dec., 517 (appendix). In that case, the constitutionality of chapter 95 of the Acts of 1829-30, was involved. Chapter 95 purported to create a special court to be holden at Nashville, and to consist of Jacob Peck, one of the judges of the supreme court, Nathan Green, one of the chancellors of this State, and William E. Kennedy, one of the judges of the circuit court, and to confer certain special jurisdiction upon such court. The bank, by its bill, invoked the judgment of said special court against Cooper upon the claim that he was indebted to it in a certain sum, and Cooper pleaded to the jurisdiction of the court. Each of the three judges named rendered an opinion holding the act to be in violation of the Constitution of the State then in force; that is to say, the Constitution of 1796.

Section 1, art, 5, of that instrument provided that:

"The judicial power of the State shall be vested in such supreme and inferior courts of law and equity as the legislature shall, from time to time, direct and establish."

Hodge v. State.

The opinion of Judge Green held that:

"It would be perfectly competent for the legislature to abolish the supreme court, and take away the right of appeal from the county to the circuit court. Each would then exercise its own peculiar jurisdiction, and be supreme within its sphere of action."

The excerpt from the opinion followed a holding therein that there then existed no constitutional guaranty of the right of appeal, that right existing only under the statute.

We need not consider the particular grounds on which each of the three judges held the act unconstitutional. Suffice it to say, when properly understood, the case is no support for the insistence of appellant which is now under consideration. The opinion of Judge Green shows that he thought the legislative department, under the Constitution then existing, was clothed with a much broader power in respect of the abolishment and creation of courts than that power which was exercised in the passage of the act of which appellant complains.

It is to be remembered that *Bank of the State* v. *Cooper* was decided in 1831. In 1834 a new Constitution was adopted, and by section 1, article 6 thereof, it was declared:

"The judicial power of this State shall be vested in one supreme court, in such inferior courts as the legislature shall, from time to time ordain and establish, and the judges thereof, and in justices of the peace the legislature may also vest such jurisdiction as may

be deemed necessary in corporation courts.''

This provision was, in turn, supplanted by section 1, article 6, of the Constitution of 1870, set out earlier in this opinion.

By the changes noted in the fundamental law, it is undoubtedly true that some of the breadth of legislative power so clearly expressed by Judge Green in *Bank of the State* v. *Cooper,* supra, was shorn away, as may be seen by examination of the opinion of the court delivered by its present Chief Justice in the *Redistricting Case* in 111 Tenn.    (3 Cates), 234, 80 S. W., 750.   See, also, the majority opinions in the *Judges' Cases,* 102 Tenn. (18 Pick.), 510, 53 S. W., 134.

In the case last mentioned the opinion  of  Judge Wilkes, commenting on the Constitution of 1870 (article 6, section 1), says:

''It is evident from the provisions of the Constitution that but few limitations were intended to be placed upon the power of the legislature to create, establish, and change inferior courts.   Limiting safeguards were placed around the supreme court, to protect it both from legislative and executive control, which were not placed around the inferior courts.   It was provided there should be but one supreme court so that its powers and prerogatives could not be lessened by being divided; the number of judges was fixed, so that it could neither be increased nor diminished; the places of holding its courts were fixed, so that they could not be changed.   None of these  limitations  were  thrown around the inferior courts.   The number of courts, the

number of judges, and the places of holding these courts were left to be determined by the legislature," etc.

In *Bank of the State* v. *Cooper,* Judge Green said:

"Nor can it be seen that it was intended to restrict legislation to the creation of such courts as should be appealed from, and therefore, 'inferior,' and an appellate court, which would be therefore, 'superior.' "

This statement was true as applied to the Constitution of 1796 of which Judge Green was speaking, but such a statement cannot be truly made of the Constitution of 1834 or that of 1870, by each of which it is provided, in section 2, art. 6, speaking of the supreme court, that:

"The jurisdiction of this court shall be appellate only, under such restrictions and regulations as may, from time to time, be prescribed by law; but it may possess such other jurisdiction as is now conferred by law on the present supreme court."

Thus was there stamped on the supreme court the distinctive character of an appellate and consequently a superior tribunal and in which, by the first section of article 6 of the Constitution of 1834 and 1870, such part of the judicial power of the State was vested as was needful for the exercise of the jurisdiction conferred. Manifestly, when one court is by the Constitution of 1870 designated as "Supreme" and vested with power and jurisdiction as aforesaid, the words, "such circuit, chancery and other inferior courts as the legislature shall, from time to time, ordain and establish,"

amount to a classification of each and all of the courts. last named as "inferior," and by force of the words. used, these inferior courts are clearly within the power conferred on the legislature to "ordain and establish."

Section 8, art. 6, of the Constitution of 1870 is:

"The jurisdiction of the circuit, chancery, and other inferior courts, shall be as now established by law, until changed by the legislature."

This section has been held to be—

"a reservation of power to alter the jurisdiction of the courts established, and as a matter of course to enlarge or diminish, or else there could be no alteration." *Jackson* v. *Nimmo,* 71 Tenn. (3 Lea), 598.

See, also, *Kelly* v. *Conner,* 122 Tenn. (14 Cates), 339, 123 S. W., 622, 25 L. R. A. (N. S.), 201.

We think the first point made by the appellant is without merit.

The next question raised is that the legislature was without power to pass section 12 of the act, which is, in substance, that the judge of the county court of Dyer county shall be the judge of and hold the criminal court of Dyer county, and shall receive no other compensation than is provided by law for such county judge. Appellant insists that section 12 of the act contravenes article 11, section 17, of the Constitution, providing that no county office created by the legislature shall be filled otherwise than by the people or the county court, but article 7, section 4, of the Constitution provides:

"The election of all officers and the filling of all vacancies not otherwise directed or provided by this Con-

stitution shall be made in such manner as the legisla-
ture shall direct.''

And it is well settled that:

''The legislature upon creating a new county office
or State office may provide for the filling of such office
by appointment until the next general election.''

*State ex rel.* v. *Trewhitt,* 113 Tenn. (5 Cates), 561, 82
S. W., 480; *Condon* v. *Maloney,* 108 Tenn. (24 Pick.),
82, 65 S. W., 871; *State ex rel.* v. *Maloney,* 92 Tenn. (8
Pick.), 62, 20 S. W., 419.

In another case it was said:

''We are also of the opinion that article 7, section 4,
of the Constitution expressly authorizes the legisla-
ture to exercise the appointing power by legislative act,
or in joint session of the members of the two houses.
There is no limitation of the agencies it may employ;
and it has been held that, where the Constitution auth-
orizes the legislature to direct a thing to be done, upon
the principle that the greater power includes the less,
it may do the thing to be directed.'' *Richardson* v.
*Young,* 122 Tenn. (14 Cates), 471, 516, 125 S. W., 664,
674, citing *Redistricting Cases,* 111 Tenn. (3 Cates),
234, 80 S. W., 750; *Luehrman* v. *Taxing Dist.,* 70 Tenn.
(2 Lea), 440.

Appellant next insists that section 4 of the act, which
provides that the clerk of the circuit court of Dyer
county shall be the clerk of ''said criminal court, and
shall perform the duties required by law of clerks in
relation to said criminal business in the circuit courts
of the State receiving the same compensation as pro-

vided by law for circuit court clerks," is an attempt by the general assembly to exercise power which it did not possess. It is said that this part of the act violates section 13, art. 6, of the Constitution. We cannot agree to this conclusion. The only part of section 13, art. 6, which applies to the point made is that which provides that:

"Clerks of inferior courts, holden in the respective counties or districts, shall be elected by the qualified voters thereof for the term of four years."

Now, if the legislature were clothed with power to enact section 12, and we have held that it had such power, we can see no reason to deny its power to enact section 4 of the act.

Up to this point we have discussed the case upon the hypothesis that appellant's view of the scheme of the act was correct, and we have answered his assaults on that theory, but we think he misconceives the scheme of the legislation. We think the legislature intended to and did create by this act a court to relieve the circuit court of Dyer county of the burden of disposing of such cases as are mentioned in section 2 of the act. To accomplish this result, it was necessary to provide for a judge to preside over the court, and to provide for an officer to perform the clerical duties for the new court, but it did not follow that a new judgeship or a new clerkship should be created, especially and exclusively charged with the duties aforesaid. It was within the power of the legislature merely to create the court, confer jurisdiction upon it, and to delegate

to the judge of the county court the additional, and incidental or *ex officio* duty of presiding as judge over the criminal court of Dyer county, and this power was exercised by section 12 of the act. The legislature had the power to provide for the performance of the clerical work necessary for the new court, and this power it exercised in section 4 of the act. These powers fall clearly within the power to "ordain and establish" inferior courts conferred on the legislature by section 1, art. 6, of the Constitution of 1870.

We have already noticed that no new judgeship was created by the act assailed, but, on the same day the act was passed the legislature passed chapter 82 of the Acts of 1915 (see page 248 of the Private Acts of that year). By this act (see its section 1) a new judgeship was created in these words:

"That there shall be elected by the qualified voters of Dyer county, Tennessee, a person learned in the law and a licensed attorney in the State of Tennessee to be styled the county judge," etc.

His term of office and duties were fixed by the act. This chapter 82 must be considered and construed *in pari materia* with chapter 78.

As is shown by the fourth section of chapter 78, and already herein noted, the clerical work for the new court was laid upon an officer already elected, qualified, and acting as clerk of the circuit court of Dyer county. The duties imposed on the clerk for the new court were merely incidental or *ex officio* in character. They were the same which as clerk of the circuit court

would have been imposed on him had chapter 78 never been passed.

By section 16 of the act it is provided:

"That all the duties that would develop upon the judge of the criminal court under this act will be performed by the chairman of the county court of Dyer county, until said criminal court judge shall have been appointed or elected, and that the chairman shall receive no additional compensation for said services than is now allowed him by the quarterly court of Dyer county."

Appellant insists that this section and section 12 of the act are violative of that part of section 26, art. 2, of the Constitution which provides:

"Nor shall any person in this State hold more than one lucrative office at the same time."

"A lucrative office is one whose pay is affixed to the performance of its duties (*State* v. *Kirk,* 44 Ind., 401, 15 Am. Rep., 239); and when the duties of the office are affixed by the statute, it is immaterial that the compensation of the officer is fixed by some other board or officer (*Chambers* v. *State,* 127 Ind., 365, 26 N. E., 893, 11 L. R. A., 613)."

The foregoing is a definition of such an office given in one of our cases. *State ex rel.* v. *Slagle,* 115 Tenn. (7 Cates), 336, 89 S. W., 326.

We are of the opinion that no new judicial office was created either by section 12 or by section 16 of chapter 78, and, furthermore, neither of said sections allows, but on the contrary each expressly disallows, any

·compensation for the services by each of these sections required, and therefore, if sections 12 and 16 ·each ·created new offices, neither of them is a lucrative office within the meaning of section 26, art. 2, of the Constitution.

The next assignment relied on by appellant admits that the judge who presided when this case was tried in the criminal court of Dwyer county was the judge of the county court of Dyer county, but insists that he was never appointed or elected judge of the criminal court of Dyer county, and therefore had no authority to preside over said court.

We have seen that section 12 of the act authorized the judge of the county court to hold the criminal court ·of Dyer county. This was sufficient authority under ·article 6, section 1, of the Constitution, which confers on the legislature the power to ordain and establish the criminal court of Dyer county. The legislature had power to make provision for a judge to preside ·over that court only, or to make that provision for a presiding judge which was made. No doubt, the legislature was moved by economic reasons. It is not our province, at least, to interfere with the exercise of a ·discretion which the Constitution has conferred upon the legislative department.

Another insistence made by appellant is based on an ·omission of the word ''county'' in the second line of the twelfth section of chapter 78, but the last words of section 12, ''county judge,'' we think, clearly show

Hodge v. State.

the omission; the intent of the lawmaking body is clearly apparent when the whole section is read.

The remaining assignments of error each and all proceed on the idea that a new office of judge and a new office of clerk of the criminal court of Dyer county were created by the act; but we think this is a fallacy, as we have already explained, and therefore we overrule these remaining assignments and affirm the judgement.