# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
October 11, 2001 Session

## JAMES E. GUNTER v. U.C.H.R.A. AND KRISTI A. POORE

**Appeal from the Circuit Court for Fentress County**
**No. 7681     Conrad A. Troutman, Judge**

---

### No. M1999-01591-COA-R3-CV - Filed June 27, 2002

---

In this appeal, the appellant, Mr. Gunter, filed a claim for personal injury and property damages against a local governmental entity in general sessions court. The governmental entity orally moved to dismiss citing the Tennessee Governmental Tort Liability Act, which grants exclusive jurisdiction over these cases to the circuit court. The general sessions court denied the motion and transferred the case to circuit court, and that court dismissed the action based on the statute of limitations. Mr. Gunter now appeals the dismissal of his case by the circuit court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Michael A. Walker, Jamestown, Tennessee, for the appellant, James E. Gunter.

Lane Moore, Cookeville, Tennessee, for the appellees, U.C.H.R.A. and Kristi A. Poore.

## OPINION

The plaintiff in the underlying action, James E. Gunter was involved in an automobile accident on December 15, 1997, when his car was struck by the defendant/appellee, Kristy A. Poore. At the time of the accident, Ms. Poore was employed by the Upper Cumberland Human Resource Agency ("U.C.H.R.A.") and was acting within the scope of her employment. Mr. Gunter filed a complaint in general sessions court on December 14, 1998, one day before the statute of limitations expired, against Ms. Poore and the U.C.H.R.A. seeking personal injury and property damages for Ms. Poore's negligent driving. Mr. Gunter then filed a motion to remove the case to circuit court, which was granted by the general sessions court on May 13, 1999.

U.C.H.R.A. filed an Answer in circuit court on June 16, 1999, in which it asserted that Ms. Poore was immune from suit pursuant to the Tennessee Governmental Tort Liability Act ("GTLA").[1] In addition, U.C.H.R.A. moved for dismissal of the complaint arguing first that the circuit court had exclusive jurisdiction over suits involving the GTLA and, since Mr. Gunter filed the case in general sessions court, his suit should have been dismissed. Further, U.C.H.R.A. argued that the general sessions judge erred by granting Mr. Gunter's motion to remove the case because there was no procedure in law, no case law authority, and no statute that allowed such a removal. U.C.H.R.A. also argued that since the statute of limitations had run, Mr. Gunter could not proceed with his action in circuit court.

The circuit court granted U.C.H.R.A.'s motion to dismiss on October 6, 1999, from which Mr. Gunter now appeals. That order stated:

> Governmental Tort liability cases are unique in that for years suits against a governmental agency could not be filed. In recent years the legislature has, under certain conditions, authorized these types of suits. Since this exception was created by the legislature, the Courts have held that [plaintiffs] must comply strictly to the statutes.
>
> In this case the parties acknowledge that the exclusive jurisdiction is with the Circuit [C]ourt. The issue in this case is whether the filing in General Sessions Court tolled the [Statute] of Limitations and/or the transfer related back to the time the suit was filed in General Sessions Court.
>
> It is the holding of the Court that since the General Sessions Court had no jurisdiction of the matter, it had no authority to transfer the same to Circuit Court. The statute of limitations had run prior to the transfer.

The parties agree that U.C.H.R.A. is a governmental entity and, as such, it is immune from suit except to the extent that the immunity has been removed by the legislature. In 1973, the legislature passed the GTLA, which partially removed the immunity for entities like U.C.H.R.A. While the Act partially removed immunity, it stated that any claim for damages "must be brought in strict compliance with the terms of this chapter." Tenn. Code Ann. § 29-20-201(c). The Act requires that all actions be brought in circuit court, except for those arising in counties having a population of more than 600,000, and that the action be commenced within twelve months after the cause of action arises. Tenn. Code Ann. § 29-20-305 (b) (Supp. 1999).

Mr. Gunter concedes that he did not file this action in circuit court within twelve months of the accident. However, he contends that by filing the action in general sessions court he tolled the

---

[1] U.C.H.R.A. based this assertion on the fact that it was a governmental entity and that, at the time of the accident, Ms. Poore was an employee of U.C.H.R.A. and was acting within the scope of her employment. Neither party disputes these facts on appeal.

running of the statue of limitations and that the transfer to circuit court kept the action alive. He also points to Tenn. Code Ann. § 16-1-116, enacted after the circuit court's ruling herein, which requires a court to transfer cases over which the court lacks jurisdiction to the appropriate court, if the interests of justice require. Mr. Gunter implores this court to apply that legislation to the case at hand. Finally, Mr. Gunter argues that Part 3 of the GTLA violates the Tennessee Constitution because it treats citizens of smaller counties differently from citizens of counties with a population of more than 600,000. We find none of these arguments persuasive and, therefore, affirm the decision of the trial court to dismiss this action.

## I. Filing in a Court Without Jurisdiction

The first issue that we must decide is whether Mr. Gunter's cause of action can be saved by the filing of his complaint in general sessions court prior to the expiration of the statute of limitations. The general rule is that "a court lacking subject matter jurisdiction over a case has no authority to transfer it, unless that authority is specifically conferred by statute, rule, or constitutional provision." *Norton v. Everhart*, 895 S.W.2d 317, 319 (Tenn. 1995). The Tennessee Supreme Court has clearly stated that trial courts possess no "inherent authority to transfer cases in the absence of statutory authority." *Id*. 895 S.W.2d at 320; *Coleman v. Coleman*, 190 Tenn. 286, 293-94, 229 S.W.2d 341, 344-45 (Tenn. 1950).[2]

The question of whether an action can be maintained against a governmental entity when it was originally filed in the general sessions court and later "removed" to the circuit court after the statute of limitations expired has previously been addressed by this court in *Doyle v. Cole*, No. M1999-02115-COA-R9-CV, 2000 Tenn. App. LEXIS 4 (Tenn. Ct. App. Jan. 10, 2000) (no Tenn. R. App. P. 11 application filed). In *Doyle*, the plaintiffs filed a civil action in the General Sessions Court of Davidson County on October 26, 1998, against the Nashville Electrical Service ("NES"), claiming that they were injured in an accident caused by an NES agent on November 6, 1997. NES filed a motion to dismiss and, in response, the plaintiffs filed a motion to "remove" the case to the circuit court. On December 10, 1998, the general sessions court transferred the case to the circuit court. NES filed a motion for summary judgment, which the circuit court overruled. An interlocutory appeal was taken to this court.

The appellees in that case conceded before this court that they had not filed their lawsuit in the circuit court within twelve months of the accident. However, they contended that by filing the action in the general sessions court they tolled the running of the statute of limitations and that the transfer to the circuit court kept the action alive, citing *Flowers v. Dyer County*, 830 S.W.2d 51 (Tenn. 1992). In *Doyle*, this court first distinguished the case therein from *Flowers* by noting that, in *Flowers*, the Tennessee Supreme Court applied the provisions of a statute, Tenn. Code Ann. § 16-

---

[2]In *Norton*, the Court invited the legislature to enact a broad transfer statute. *Norton*, 895 S.W.2d at 320. The legislature has since done so in Tenn. Code Ann. § 16-1-116.

11-102(b), that mandated the transfer of suits filed in chancery court to the circuit court when the chancery court does not have subject matter jurisdiction.[3]  This court then stated:

> We know of no comparable statutory provisions mandating (or allowing) a case to be transferred from the general sessions court to the circuit court.  The circuit court does have appellate jurisdiction over cases tried in the general sessions court, Tenn. Code Ann. § 16-11-112, and the circuit court and chancery courts may remove cases from the general sessions courts by writ of certiorari.  Tenn. Code Ann. § 27-8-104.  But we hold that the general sessions court did not have the authority to transfer one of its cases to the circuit court prior to the rendition of judgment.
>
> In a case involving an unauthorized transfer from the circuit court to the Tennessee Claims Commission, this court dismissed the action on a statute of limitations defense.  The court said, "since the case was not transferred pursuant to Tenn. Code Ann. § 9-8-307(i)(1), the filing of the action in the Circuit Court . . . cannot be relied upon to toll the running of the statute of limitations." *Locust v. State*, 912 S.W.2d 716, 718 (Tenn. Ct. App. 1995).  We think the same reasoning applies here.

*Doyle*, 2000 Tenn. App. LEXIS 4, at *3-*4 (footnote omitted).  In accordance with *Coleman*, *Norton*, and *Doyle*, we find that Mr. Gunter's filing of the complaint herein in general sessions court did not toll the statute of limitations, and the "removal" was unauthorized.[4]  Thus, he did not file his lawsuit in the court with exclusive jurisdiction within the time allowed by statute.

## II.  Tenn. Code Ann. § 16-1-116

Mr. Gunter argues that this court should apply Tenn. Code Ann. § 16-1-116 to allow the transfer to circuit court, thereby saving his lawsuit from the statute of limitations.  Tenn. Code Ann. § 16-1-116 was signed into law on May 23, 2000, seven months after the trial court dismissed his lawsuit.[5]  Mr. Gunter argues that this court should apply Tenn. Code Ann. § 16-1-116 retroactively to save his cause of action.

Tenn. Code Ann. § 16-1-116 states:

---

[3]The Supreme Court made the same distinction in *Norton*, stating "we did not base our holding [in *Flowers*] upon any inherent power of the chancery court. Rather, we determined that the general statute governing the jurisdiction of circuit and chancery courts, Tenn. Code Ann. § 16-11-102, mandated the transfer." *Norton*, 895 S.W.2d at 320.

[4]At the time of the *Doyle* decision and at the time U.C.H.R.A. asserted its statute of limitations defense herein, Tenn. Code Ann. § 16-1-116, which provides statutory authority for such a transfer, was not in existence.

[5]Obviously, the statute was enacted after Mr. Gunter's injury and after his lawsuit was filed. It was also signed a year, almost to the day, after Mr. Gunter filed to have his case removed to the circuit court. It became effective almost one year after U.C.H.R.A. asserted its statute of limitations defense.  Further, it was enacted seven months after the circuit court's order dismissing the case and after Mr. Gunter gave his notice of appeal to this court.

-4-

**Transfer of actions or appeals. -** Notwithstanding any other provision of law or rule of court to the contrary, when an original civil action . . . is filed in a state or county court of record or a general sessions court and such court determines that it lacks jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was originally filed.  Upon such a transfer, the action or appeal shall proceed as if it had been originally filed in the court to which it is transferred on the date upon which it was actually filed in the court from which it was transferred.

Tenn. Code Ann. § 16-1-116 (Supp. 2001).

The Tennessee Supreme Court has said, "It is the rule that statutes do not operate retroactively, unless this is so provided therein." *Henderson v. Ford*, 488 S.W.2d 720, 721 (Tenn. 1972).  *Henderson* cites *Jennings v. Jennings*, 165 Tenn. 295, 54 S.W.2d 961 (1932), as "a good statement of this rule," which is stated as follows:

It was said by this court . . . "that all statutes are to be construed as having only a prospective operation, unless the purpose and intention of the Legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used.  In every case of doubt, the doubt must be solved against the retrospective effect."  And again "that the law will not be given a retrospective operation, unless that intention has been manifested by the most clear and unequivocal expression."

*Jennings*, 165 Tenn. at 303, 54 S.W.2d at 963-64 (citations omitted); *see also Henderson*, 488 S.W.2d at 721.

An exception to this general rule exists in the case of statutes which are purely procedural in nature.  Thus, procedural statues may be retroactively applied to an existing cause of action, unless the legislature indicates a contrary intention or retroactive application would produce an unjust result. *Saylors v Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976).  However, retrospective application of a statute whose primarily purpose is procedural is constitutionally forbidden if it creates a new right, takes away a vested right or impairs contractual obligations. *Henderson*, 488 S.W.2d at 721; *see Collier v. Memphis Light, Gas & Water Div.*, 657 S.W.2d 771, 775 (Tenn. Ct. App. 1983).  Our Supreme Court has construed Article I, section 20 of the Tennessee Constitution, as prohibiting laws "which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed." *Doe v. Sundquist*, 2 S.W.3d 919, 923 (Tenn. 1999) (citing *Morris v. Gross*, 572 S.W.2d 902, 905 (Tenn. 1978)).

Therefore, the issue is whether the retroactive application of Tenn. Code Ann. § 16-1-116 would impair any vested right of U.C.H.R.A.  A "'vested right,' although difficult to define with precision, is one 'which it is proper for the state to recognize and protect and of which [an]

-5-

individual could not be deprived arbitrarily without injustice.'" *Id.* The Tennessee Supreme Court has long held that:

> When a cause of action is barred by a statute of limitations, in force at the time the right to sue arose and until the time of limitation expired, that the right to rely upon the statute as a defense is a vested right that can not be disturbed by subsequent legislation.

*Yancy v. Yancy*, 52 Tenn. 353, 362 (1871); *see also Owens v. Truckstops of Am.*, 915 S.W.2d 420, 427 (Tenn. 1996) (holding that "This Court has determined that a potential defendant acquires a vested right not to be sued once a cause of action has accrued and the applicable statute of limitations has expired.); *Watts v. Putnam County*, 525 S.W.2d 488, 492 (Tenn. 1975); *Collier*, 657 S.W.2d at 775; *Estate of Carlisia Toney v. Cunningham*, C.A. No. 02A01-9801-CV-00005, 1999 Tenn. App. LEXIS 222, at *6 n.2 (Tenn. Ct. App. Apr. 6, 1999) (no Tenn. R. App. P. 11 application filed). This holding has been applied in the context of an action under the GTLA. *Collier*, 657 S.W.2d at 775.

In *Collier*, the plaintiff sought a wrongful death action against the state for the death of her son, who was a minor. The accident giving rise to the wrongful death claim occurred on August 8, 1978, when a wrongful death claim was subject to a one year statute of limitations. In 1980, the Legislature extended the statute of limitations for a minor's wrongful death claim until one year after the decedent would have reached the age of 18 years. *See* Tenn. Code Ann. § 28-1-106 (1980); *Collier*, 657 S.W.2d at 773. The plaintiff filed a complaint against the state on July 20, 1981, which was dismissed by this court. We stated:

> We . . . consider, however, whether the amendment to the Act in 1980 can be applied retrospectively. As noted, suit was not filed within 12 months of the accrual of the cause of action, and absent the application of Tenn. Code Ann. § 28-1-106, the cause of action is barred.
>
> When a statute creates a new right, takes away a vested right, or impairs contractual obligations, its retrospective application is constitutionally forbidden. TENN. CONST. art. 1 § 20; *Anderson v. Memphis Housing Auth.*, 534 S.W.2d 125, 127 (Tenn. Ct. App. 1975). Since the suit of plaintiffs was barred at the time of the amendment to the Act, there can be no doubt that a retrospective application of the amendment is forbidden as taking away a vested right. Therefore, we hold that the actions of the plaintiffs under the Act are barred . . . .

*Collier*, 756 S.W.2d at 775.

Similarly, in the case herein, Mr. Gunter's suit was barred at the time of the enactment of Tenn. Code Ann. § 16-1-116. If this court allowed Mr. Gunter to rely on Tenn. Code Ann. §16-1-116 it would impair U.C.H.R.A.'s vested right in its statute of limitations defense, in contravention of the Tennessee Constitution. U.C.H.R.A. had an absolute defense to any case brought against it

by Mr. Gunter after the one year statute of limitations had run. U.C.H.R.A.'s defense vested December 16, 1998, one year and one day after the date of the accident. The legislation, enacted May 23, 2000, cannot impair U.C.H.R.A.'s vested right in its statute of limitations defense.

### III. Constitutional Law Argument

The last issue that we must address is whether the Tennessee Constitution prevents the dismissal of Mr. Gunter's complaint. Mr. Gunter argues that dismissal of his case violates the Constitution for two reasons.[6] The first is that Tenn. Code Ann. § 29-20-307 allows only citizens residing in counties which have a population of more than 600,000 to file a claim based on the GTLA in general sessions court, thereby treating Mr. Gunter, who resides in Fentress County, which has a population of less than 600,000, differently.

The text of Tenn. Code Ann. § 29-20-307 reads:

> The circuit courts shall have exclusive original jurisdiction over any action brought under this chapter and shall hear and decide such suits without the intervention of a jury, except as otherwise provided in § 29-20-313(b); provided, that in counties having a population of more than six hundred thousand (600,000) according to the 1970 federal census or any subsequent federal census, the general sessions court shall have concurrent original jurisdiction with such circuit court over any action brought under this chapter; and provided further, that the jurisdiction conferred upon the general sessions court by the provisions of this section shall not extend beyond the jurisdictional dollar limit provided in § 16-15-501(d) for such general sessions courts in civil cases generally.

*Id.* The only county that meets the population requirements of Tenn. Code Ann. § 29-20-307 by having a population of more than 600,000 according to the 1970 or later census is Shelby County. *See* Tenn. Code Ann. tit. 13 Tables p. 1013.[7] In all other counties in the state, the general sessions

---

[6]Nothing in the record before us indicates that the Attorney General was provided notice of the challenge to the constitutionality of the statute, as is required by Tenn. R. Civ. P. 24.04. In *In re E.N.R.*, 42 S.W.3d 26 (Tenn. 2001), with regard to such procedural failure, the Tennessee Supreme Court noted that one challenging the constitutionality of a statute must bear the "heavy burden" of overcoming the presumption that the statute is constitutional. *Id.* at 31. Further, the court stated that "constitutional issues should rarely be foreclosed by procedural technicalities . . ." but that the plaintiff's argument therein "was little more than an afterthought." *Id.* at 62 (finding the constitutional issue was not properly raised at the trial court). The issue of lack of notice to the Attorney General has not been raised herein and the consequences of that failure have not been addressed. Taking guidance from the Tennessee Supreme Court's comments in *In Re E.N.R.,* where such consequences had been debated in this court, we have chosen to address Mr. Gunter's constitutional argument.

[7]*See also* www.census.gov/main/www/cen2000.html (giving the year 2000 census statistics).

court does not have concurrent jurisdiction with the circuit court to hear cases brought pursuant to the GTLA. Thus, in every county but one, all claimants under the GTLA must file in circuit court.

Mr. Gunter argues that the population requirement in Tenn. Code Ann. § 29-20-307 is a violation of the Equal Protection Clause of the Tennessee Constitution. We begin our analysis by noting that "the Legislature of Tennessee, like the legislature of all other sovereign states, can do all things not prohibited by the Constitution of this State or of the United States." *Nolichuckey Sand Co., Inc. v. Huddleston*, 896 S.W.2d 782, 788 (Tenn. Ct. App. 1994) (citing *Perry v. Lawrence Election Comm.*, 219 Tenn. 548, 411 S.W.2d 538, 539 (Tenn. 1967)). Therefore, courts must uphold legislation except where it directly impinges on the state or federal constitutions. *Id.*

Of the two provisions of the Tennessee Constitution that guarantee equal protection, Mr. Gunter claims only one is violated by the population classification in Tenn. Code Ann. § 29-20-307: the Class Legislation Clause, which provides:

> **General laws only to be passed.**–The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges,[ immunities], or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

TENN. CONST. art. XI, § 8.

The Tennessee Supreme Court has previously considered constitutional challenges to legislation based on population classifications and has interpreted Article XI, section 8 of the Tennessee Constitution as prohibiting the legislature from passing laws that benefit a specific county or counties or an individual or individuals unless the special classification rests on a reasonable basis. The Court recently explained the appropriate analysis.

> We have often recognized that the Class Legislation Clause of Article XI, section 8 is similar to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and this Court has previously applied Equal Protection analysis to questions arising under the Class Legislation Clause. *See, e.g., Riggs v. Burson*, 941 S.W.2d 44, 52 (Tenn. 1997). To this end, we have recognized that Article XI, section 8 "guarantees that persons similarly situated shall be treated alike" *Evans v. Steelman*, 970 S.W.2d 431, 435 (Tenn. 1998) (citation omitted), and that it "prohibits the General Assembly from suspending the general law or passing any law inconsistent with the general law for the benefit of any individual [or group of individuals]. . . ." *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 440 n. 3 (Tenn. 1998).

> However, the Class Legislation Clause does not remove from the General Assembly all power to draw classifications distinguishing among differing groups. "The initial

discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States, and the legislatures are allowed considerable latitude in establishing classifications and thereby determining what groups are different and what groups are the same." *State v. Smoky Mountain Secrets, Inc.*, 937 S.W.2d 905, 912 (Tenn. 1996) (quoting *Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L.Ed.2d 786 (1982) (internal quotation marks removed)). Therefore, unless the classification "interferes with the exercise of a 'fundamental right' or operates to the peculiar disadvantage of a 'suspect class,' Article XI, section 8 requires only that the legislative classification be rationally related to the objective it seeks to achieve. *See, e.g., Newton v. Cox*, 878 S.W.2d 105, 110 (Tenn. 1994).

*City of Chattanooga v. Davis,* 54 S.W.3d 248, 276 (Tenn. 2001).

Accordingly, unless a fundamental right or suspect class is involved, legislative classifications are generally examined to determine if there is a rational basis for the classification. Because all citizens with claims against local governments are provided a method to bring those actions, no fundamental right is implicated by the statutory provision allowing citizens of the most populous county to bring qualifying GTLA actions in either of two courts. Neither Mr. Gunter nor other individuals are denied access to courts by the provision. Similarly, the provision does not adversely affect any suspect class.

In applying the rational basis test, courts presume that the legislature acted constitutionally and will uphold the statute "if any state of facts can reasonably be conceived to justify the classification or if the unreasonableness of the class is fairly debatable. . . ." *City of Chattanooga*, 54 S.W.3d at 276 (quoting *Bates v. Alexander*, 749 S.W.2d 742, 743 (Tenn. 1988)). When determining whether a rational or reasonable basis exists for the legislature's special classification based on population we must first look to any reason provided by the act. *Stalcup*, 577 S.W.2d 439, 442 (Tenn. 1978). However:

It is not necessary that the reasons for the classification appear on the face of the legislation. *State ex rel. Melton v. Nolan*, 161 Tenn. 293, 30 S.W.2d 601 (1930). If any possible reason can be conceived to justify the classification, it will be upheld and deemed reasonable. *Knox-Tenn Theaters v. McCanless*, 177 Tenn. 497, 151 S.W.2d 164 (1941). So long as the statute applies equally and consistently to all persons who are or may come into the like situation or circumstance, it is not objectionable as being based upon an unreasonable classification. *Stratton v. Morris*, 89 Tenn. 497, 15 S.W. 87 (1890). There is no general rule by which to distinguish a reasonable from an unreasonable classification, the question being a practical one varying with the facts in each case. *Dilworth v. State*, 204 Tenn. 522, 322 S.W.2d 219 (1959). Where the reasonableness of the classification is fairly debatable the courts will uphold the classification. *Phillips v. State*, 202 Tenn. 402, 304 S.W.2d 614 (1957). The burden of showing that the classification does not rest upon a

reasonable basis is upon the party attacking the statute. *Estrin v. Moss*, 221 Tenn. 657, 430 S.W.2d 345 (1968).

*Stalcup*, 577 S.W.2d at 442.

In *Hart v. City of Johnson City*, 801 S.W.2d 512 (Tenn. 1990), the Tennessee Supreme Court listed cases in which the use of population classifications in legislation which rendered general statutes applicable in one or several, but not all, counties were upheld as having a rational basis:

This Court has upheld the use of population classifications in legislation which has rendered general statutes applicable in several, but not all, counties in which the Court found a rational basis for the classification. *See, e.g., Bates v. Alexander*, 749 S.W.2d 742 (Tenn. 1988) (upholding a statute requiring county registers to collect increased fees, except in the five most populous counties in the state); *Baker v. State*, 191 Tenn. 559, 235 S.W.2d 435 (1950) (upholding an Act prescribing a special method of selecting juries in certain counties); *Reasonover v. City of Memphis*, 162 Tenn. 633, 39 S.W.2d 1029 (1931) (upholding Acts authorizing assessment of costs of street improvements in cities of more than stated populations); *Darnall v. Shapard*, 156 Tenn. 544, 3 S.W.2d 661 (1928) (upholding an Act relating to the licensing of dogs in certain counties).

We have also upheld legislation which has rendered general statutes applicable in only one county, where we found a rational basis for the classification. *See e.g., Shelby County Civil Service Merit Bd. v. Lively*, 692 S.W.2d 15 (Tenn. 1985) (upholding an act eliminating authority of county officials to terminate deputies, applicable solely in Shelby County); *Harwell v. Leach*, 672 S.W.2d 761 (Tenn. 1984) (upholding a statue prohibiting the sale of fireworks, applicable only in Knox County); *Peterson v. Grissom*, 194 Tenn. 26, 250 S.W.2d 3 (1952) (upholding a "road law," applicable to only one county by virtue of population classification); *Elliott v. Fuqua*, 185 Tenn. 200, 204 S.W.2d 1016 (1947) (upholding a statute prohibiting the sale of pyrotechnics, applicable only in Davidson County); *Knox County v. State ex rel. Nighbert*, 177 Tenn. 171, 147 S.W.2d 100 (1940) (upholding the Teacher Tenure Act, applicable to Knox County alone); *cf. Canale v. Stevenson*, 224 Tenn. 578, 458 S.W.2d 797 (1970) (invalidating for absence of rational basis, a statute forbidding "fortune telling," applicable only in Shelby County).

*Hart*, 801 S.W.2d at 514-15.[8]

---

[8]*Hart* was decided on a different provision of the Tennessee Constitution, but the Court included a history of challenges to population based legislative classifications as a background to its analysis.

In the area of fixing jurisdiction of courts, the Tennessee Constitution gives wide discretion to the General Assembly. "The judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery or other inferior Courts as the legislature shall from time to time, ordain and establish; . . ." TENN. CONST. Art VI, § 1. In addition, Article VI, section 8 provides "the jurisdiction of the Circuit, Chancery and other Inferior Courts, shall be as now established by law, until changed by the legislature."

"It is evident from the provisions of the Constitution that but few limitations were intended to be placed upon the power of the legislature to create, establish, and change inferior courts." *Hodge v. State*, 135 Tenn. 525, 532, 188 S.W. 203, 204 (1916). Further, section 8 of Article 6 is "a reservation of power to alter the jurisdiction of the courts established, and as a matter of course to enlarge or diminish, or else there could be no alteration." *Id*. 135 Tenn. at 534, 188 S.W. at 205 (citing *Jackson v. Nimmo*, 71 Tenn. 597, 598 (1879)).

These principles have been applied to statutes making jurisdictional changes in a court in one county as well as to creation and jurisdiction of special courts. *See, e.g.*, *White v. Garner*, 192 Tenn. 429, 241 S.W.2d 518 (1951). In *White*, the Supreme Court considered an argument that an act creating the Law Court of Humboldt County violated Article 11, section 8 of the Tennessee Constitution. The Court held, first, that the act was not inconsistent with the general law regarding venue in transitory actions, and also stated:

> There is nothing in the Act to prohibit a citizen of the jurisdiction of the Humboldt Law Court from being sued, in any other county of the State, if found within the County. This law is not passed for the benefit of any particular individual or group of individuals but is purely passed to localize the actions relative to the various districts of the County and the citizens thereof. . . . We can see no constitutional prohibition against such an Act.

*Id*. 192 Tenn. at 437, 241 S.W.2d at 521.

Even more pertinent to the issue herein, in *Rains v. Rains*, 58 Tenn. App. 214, 428 S.W.2d 650 (1968), the appellant challenged the jurisdiction of the general sessions court of Overton County to hear and determine divorce cases and divest title to real estate because of the monetary jurisdictional limitation generally applicable to general sessions court. Prior to *Rains*, this court had recognized that the specific general sessions court at issue had been given "concurrent jurisdiction with the circuit and chancery courts in matters relating to divorce" and, therefore, was "when acting in this area of the law, a court of general jurisdiction." *Langford v. Langford*, 220 Tenn. 600, 603, 421 S.W.2d 632, 634 (1967). The *Rains* court then stated:

> Section 1 Article 6 of the Constitution of Tennessee, and the many cases annotated thereunder in Volume 1 of Tennessee Code Annotated, adequately disposes of any question of the authority of the General Assembly to make allocation of judicial powers and jurisdiction.

*Rains*, 58 Tenn. App. at 223, 428 S.W.2d at 655. Thus, the court found no violation of the Special Legislation Clause of the Tennessee Constitution in an act giving to the general sessions court in one county concurrent jurisdiction with circuit court, which is exactly what the provision being challenged by Mr. Gunter does.[9]

Finally, in *City of Chattanooga*, the Tennessee Supreme Court upheld against a Class Legislation Clause challenge an act allowing municipalities to adopt by ordinance state traffic offenses. The court found that the purpose of the legislation was "economy, efficiency, and expeditious handling of traffic cases," which provided a rational basis. 54 S.W.3d at 277.

We conclude that the provision allowing citizens of the most populous county or counties to bring qualifying GTLA actions in general sessions courts has a rational basis. The constitution's grant to the legislature of wide discretion to set and alter jurisdiction of courts implies the kind of legislative decision evidenced by the challenged provision, designed to accommodate the needs of citizens and the workload of courts, with the goal of judicial economy. Such decisions are often most appropriately made on the basis of the situation existing in a particular locality.

The second issue of constitutionality we must address is Mr. Gunter's argument that it would be unconstitutional to hold that the filing of the plaintiff's claim in *Flowers* tolled the statute of limitations, but that his filing in general sessions court did not toll the statute of limitations. As previously stated, the Tennessee Supreme Court in *Flowers* followed the provisions of a statute, Tenn. Code Ann. § 16-11-102(b), that mandated the transfer of suits filed in chancery court to the circuit court when the chancery court does not have subject matter jurisdiction. The Court later distinguished its holding in *Flowers* from the situation where no statutory authority for transfer exists. *Norton*, 895 S.W.2d at 320. Similarly, there was no statute authorizing the transfer or "removal" herein at the time this action was filed or at the time it was dismissed. Therefore, the cases are distinguishable, and this argument is without merit.

IV.

We affirm the decision of the trial court dismissing this complaint, remand the case for any further proceedings that may become necessary, and tax the costs on appeal to the appellant, Mr. Gunter.

_____
PATRICIA J. COTTRELL, JUDGE

---

[9]The general sessions court is given concurrent jurisdiction with the circuit court for claims only up to the monetary jurisdictional limit of that court under Tenn. Code Ann. § 29-20-307.